UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MERYL BRODSKY AND ELECT MERYL
BRODSKY TO THE NEW YORK CITY
COUNCIL 2005,

                        Plaintiffs,

            -against-

ZACHARY W. CARTER, CORPORATION
COUNSEL FOR THE CITY OF NEW YORK,
ON BEHALF OF THE NEW YORK CITY
CAMPAIGN FINANCE BOARD,

                      Defendants.

15-CV-3469 (GBD) (DF)

**REPORT AND
RECOMMENDATION**

---

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

In this action, *pro se* plaintiff Meryl Brodsky ("Brodsky"), a former candidate for the

New York City Council, together with her political committee, "Elect Meryl Brodsky to the New

York City Council 2005" (the "Committee") (collectively, "Plaintiffs"), purports to bring claims

under 42 U.S.C. § 1983, alleging that Defendant, identified in the caption of the Complaint as

"Zachary W. Carter, Corporation Counsel for the City of New York, on Behalf of the New York

City Campaign Finance Board" (*see* Complaint, dated May 4, 2015 ("Compl.") (Dkt. 1)),

violated Plaintiffs' rights by requiring them to repay $35,850 that they received through the

matching campaign funds program established by the New York City Campaign Finance Act.[1]

---

[1] While Plaintiffs name Zachary W. Carter ("Carter") as Defendant, the allegations in the
Complaint all relate to the determination of the New York City Campaign Finance Board (the
"Campaign Finance Board" or the "Board") as to Plaintiffs' obligation to return campaign funds
and to the Board's effort to collect such funds. Given that the Complaint contains no allegations
suggesting that Carter was personally involved in the Board actions underlying Plaintiffs' claims,
Plaintiffs' claims appear to be improperly directed against him. *See, e.g., Grullon v. City of New
Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that . . . in a suit brought under
§ 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged

Plaintiffs further allege that, in its efforts to recover funds from them, Defendant violated federal criminal law, the Internal Revenue Code, and state and local law.

Currently before this Court for a report and recommendation is a motion by Defendant to dismiss the Complaint under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that, *inter alia,* Plaintiffs' claims are inadequately pleaded, precluded by decisions rendered against them in various state-court proceedings, time-barred, and/or based on criminal or other statutes that do not allow for private rights of action. For the reasons discussed below, I recommend that Defendant's motion be granted. More specifically, I recommend that Brodsky's federal claims be dismissed with prejudice as either time-barred or non-cognizable, and that, although the Committee has not appeared in this action through counsel, and cannot be represented by Brodsky,[2] the Committee's federal claims be dismissed as futile for the same reasons. I further recommend that, under 28 U.S.C. § 1367(c)(3), the Court decline to exercise supplemental jurisdiction over any of Plaintiffs' remaining state or local-law claims.

## BACKGROUND

A.    Factual Background[3]

1.    The Board's Determination of Plaintiffs' Repayment Obligation

Brodsky was a City Council candidate in the 2005 primary election (Kruk Decl., Ex. A, at 1), and her Committee participated in the matching campaign funds program established by

---

constitutional deprivation."). Given that this is a *pro se* action, I recommend that the Court construe the Complaint to assert claims directly against the Board, rather than against Carter on the Board's behalf.

[2] As a *pro se* litigant who is apparently not herself an attorney, Brodsky can only represent herself in proceedings before this Court. *See Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir. 1998).

[3] The factual allegations in Plaintiffs' Complaint are difficult to follow, and this Court has therefore drawn much of the information summarized herein from the several New York

the New York City Campaign Finance Act and administered by the Campaign Finance Board. (*Id.*) Through that program, the Committee received $55,776 in matching funds. (*Id.*)

Following the September 2005 primary elections, the Board conducted a post-election audit and issued a preliminary determination stating that the Committee might be required to repay $47,310. (*Id.*) On April 28, 2006, the Board issued a "Notice of Alleged Violation, Proposed Penalty and Opportunity to Respond," stating that the Committee was required to repay $41,565. (*Id.* at 2.) This figure included unspent funds in the amount of $25,975.44, certain expenditures – including $14,500 in payments to Mark Feinsot ("Feinsot"), the Committee's treasurer and a certified public accountant, and a $1,045 payment to Staples – that, according to the Board, appeared improper "due to timing, amount, and purpose," and a $777 penalty for making such improper expenditures. (*Id.*) The Committee challenged the Board's calculations, providing documents to substantiate its claim that the payments to Feingold were proper and that the purchase of holiday cards from Staples was a campaign-related expense. (Compl. at ¶ 47.) On August 10, 2006, and August 17, 2006, respectively, the Board issued a letter and final audit report, which reduced the penalty against the Committee to $470 and stated the Board's final determination that the Committee was required to repay a total of $35,415 in unspent or misspent funds. (Kruk Decl., Ex. A, at 2.)

---

state court decisions that address the background facts at issue in this litigation. (*See* Declaration of Carolyn E. Kruk, Esq., dated Aug. 20, 2015 ("Kruk Decl.") (Dkt. 13), Ex. A, at 1; Ex. B (*Matter of Brodsky v. N.Y. City Campaign Fin. Bd.*, 869 N.Y.S.2d 508 (1st Dep't 2008); Ex. C (*Brodsky v. N.Y. City Campaign Bd.*, No. 118316/06 (N.Y. Sup. Ct., Dec. 16, 2009); Ex. D (*Brodsky v. N.Y. City Campaign Bd.*, No. 118316/06 (N.Y. Sup. Ct., Mar. 9, 2010); Ex. E (*Brodsky v. N.Y. City Campaign Bd.*, No. 118316/06 (N.Y. Sup. Ct., July 9, 2010); Ex. F (*Brodsky v. N.Y. City Campaign Bd.*, No. 118316/06 (N.Y. Sup. Ct., filed July 16, 2010); Ex. G (*Matter of Brodsky v. N.Y. City Campaign Fin. Bd.*, 914 N.Y.S.2d 629 (1st Dep't 2011); Ex. H (*Matter of Brodsky v. N.Y. City Campaign Fin. Bd.*, 971 N.Y.S.2d 265 (1st Dep't 2013); Ex. I.)

On September 15, 2006, the Committee wrote to the Board, through the Committee's counsel, to dispute the Board's final determination and to inform the Board that, according to the Committee's own calculations, its total repayment obligation was $26,010. (*Id.*) The Committee offered to settle the matter by paying that amount, stating that it had deposited unspent funds in the amount of $25,975.44 in an eight-month interest-bearing certificate of deposit, and enclosing a check for $34.56 – the difference between the deposited, unspent funds and the amount the Committee believed that it owed. (*Id.*) By letter dated November 6, 2006, the Board rejected the Committee's offer of settlement and informed the Committee that the Board might initiate a civil action if the full amount were not promptly returned. (*Id.*)

### 2.    State Court Proceedings

In December 2006, Brodsky, Feinsot, and the Committee commenced an Article 78 proceeding in New York state court, seeking an order declaring the Board's determination arbitrary, capricious, and contrary to state law, stating that Feinsot was not personally liable for the repayment of campaign funds, finding that the Committee had been denied due process under state law, and declaring that the proper amount of the reimbursement obligation was $25,975.44. (*Id.* at 3.) By Order dated June 21, 2007, Justice Eileen A. Rakower of the New York State Supreme Court, New York County, determined that there was no reason to overturn the Board's "considered and rational decision" that the Committee owed $35,415 in unspent or misspent campaign funds. (*Id.* at 10.) Although Justice Rakower determined that Feinsot was not personally liable for the reimbursement obligation (*id.* at 10-11), the court ordered Brodsky and the Committee to remit $35,850 to the Board immediately.[4] (*Id.* at 11; Declaration of Meryl

_____

[4] This amount was the sum of the Committee's $35,380 outstanding repayment obligation ($35,415 minus the $34.56 it had already paid) and the $470 penalty.

Brodksy, dated Sept. 2, 2015 ("Pl. Decl.") (Dkt. 15-1), Ex. E (Aug. 31, 2009 Judgment).)

Brodsky and the Committee did not comply with that Order; rather, Brodsky paid the Board only

$26,010 – the amount of the earlier settlement offer. (Compl. ¶ 26; Kruk Decl., Ex. D, at 1.)

Brodsky and the Committee appealed the Supreme Court's determination, and, on

December 30, 2008, the Appellate Division, First Department, affirmed, stating that the Board

had acted reasonably in determining that the payments at issue were "improper 'bonus payments

or gifts to staff or volunteers' paid out of leftover campaign funds." (*See* Kruk Decl., Ex. B,

at 2.) Specifically, the appellate court determined that: (1) the Board's determination of the

penalty amount and repayment obligation was not arbitrary, capricious, or contrary to law;

(2) the Board had complied with its own rules when it issued a penalty determination prior to a

decision on the final repayment obligation; and (3) there was no merit to the claim that the

Committee had been denied due process. (*Id.* at 1-2.)

On August 31, 2009, a judgment was entered against Brodsky and the Committee in the

amount of $35,850 (Pl. Decl., Ex. E), and, on that same day, the Board served an information

subpoena and questionnaire on Brodsky, in connection with the Board's effort to obtain

satisfaction of that judgment. (Kruk Decl., Ex. C, at 1-2.) When Brodsky did not return the

questionnaire, the Board moved for an order finding Brodsky in contempt and compelling her to

answer the subpoena. (*Id.* at 2.) Brodsky opposed the motion and cross-moved to quash the

subpoena and vacate the August 31, 2009 judgment. (*Id.*) By Order dated December 14, 2009,

Justice Rakower ruled that the Board was entitled to Brodsky's answers in connection with its

collection of the judgment and ordered her to respond completely and accurately to the

subpoena. (*Id.* at 3.) Brodsky appealed that decision, attaching to her notice of appeal a

"completely redacted" set of answers to the subpoena, and the Board then moved to compel

5

production of unredacted responses. (Kruk Decl., Ex. D, at 2.) In opposition, Brodsky argued that the enforcement of both the judgment and the December 14, 2009 Order was stayed pending the outcome of the appeal, and that the judgment should reflect that the Board had accepted a payment of $26,010 shortly after the decision was issued. (*Id.* at 2.) By Order dated March 8, 2010, the court rejected Brodsky's arguments and ordered her to provide unredacted responses to the subpoena within seven days and to appear for a deposition within 10 days. (*Id.* at 3.)

In the Complaint in this action, Plaintiffs allege that the Board then began to "extort" Feinsot, by serving him with a subpoena commanding him to produce Brodsky's tax returns and other financial information. (Compl. ¶¶ 125-33.) Brodsky and Fiensot apparently resisted such disclosure, and when the Board's efforts to collect the judgment continued to be unsuccessful, it moved in the New York State Supreme Court, New York County, for an order pursuant to N.Y. C.P.L.R. § 5225(b), requiring Computershare, an investor services company, to turn over a sufficient number of Brodsky's Exxon-Mobil Corporation ("Exxon") shares to satisfy the judgment. (Kruk Decl., Ex. E, at 1.) On July 9, 2010, the Court issued such an Order and directed Computershare to remit $13,290.40[5] of Brodsky's Exxon stock.[6] (*Id.* at 3.) Brodsky appealed that determination.

On January 18, 2011, the Appellate Division affirmed Justice Rakower's December 14, 2009 Order requiring Brodsky to respond completely and accurately to the information subpoena and questionnaire. (Kruk Decl., Ex. G.) In that decision, the Appellate Division found that

_____

[5] This amount represents the amount of the judgment that remained unpaid at that time, plus Sheriff's fees and statutory interest.

[6] Feinsot had cross-moved to quash the subpoena (*id.*, Ex. E, at 1), but Justice Rakower found that her July 9 Order had rendered the motion to quash moot, and ordered that Feinsot need not produce the information sought in the subpoena. (*Id.* at 3.)

Brodsky had waived any objection to the Supreme Court's jurisdiction over her and ruled that she had not been prejudiced by any technical defects in the judgment. (*Id.* at 1.)

On June 20, 2013, the Appellate Division also affirmed the July 9, 2010 Order directing the sale of Brodsky's Exxon stock. (Kruk Decl., Ex. H.) The court rejected Brodsky's argument that she, as the candidate, was not personally liable for the repayment of campaign funds, stating that the issue was unpreserved for review. (*Id.* at 2.) The court further stated that, even if the issue were properly before it, Brodsky would be barred from asserting such a defense under the law of the case, as the issue had been resolved on the appeal from her original Article 78 petition. (*Id.*) The court noted that Brodsky had never explicitly argued that she could not be held personally liable for the debts of the campaign, but that, in the first appeal, the court had "affirmed the motion court's determination that [Brodsky] and the [C]ommittee had to repay . . . the requested amount." (*Id.*) Moreover, the court stated that Brodsky had conceded, in her original Article 78 petition, that both she and the Committee were liable for the repayment of campaign funds. (*Id.*)

In a December 30, 2014 decision, the Appellate Division affirmed Justice Rakower's August 31, 2009 Order directing Brodsky and the Committee to remit the full amount of unspent or misspent campaign funds. (Kruk Decl., Ex. I.) The court noted that it had previously rejected Brodsky's efforts to vacate the underlying judgment, and determined that Brodsky's renewed attempts to attack that judgment collaterally were barred under the doctrines of *res judicata* and law of the case, and that her claims were otherwise without merit. (*Id.* at 1.)

**B.    Procedural History of This Action**

1.    **Plaintiffs' Complaint**

Brodsky initiated this action on May 4, 2015, by filing a *pro se* Complaint. (*See* Compl.)

While, as noted above (*see supra*, at n.3), the Complaint is not a model of clarity, it appears that

the following allegations form the basis of Plaintiffs' claims.  First, Plaintiffs allege that the

Board "conceal[ed] material facts" in order to disguise the fact that it had fraudulently calculated

the Committee's repayment obligation. (*Id.* ¶ 1.)  Second, Plaintiffs allege that the Board

engaged in these actions because it was biased against Brodsky as a result of her support for

political positions contrary to those of the Board (*id.* ¶¶ 20-30), as well as her participation in a

lawsuit against the City of New York in 1986, when the Chairman of the Board had served as

Corporation Counsel for the City of New York (*id.* ¶ 68).  Plaintiffs further allege that the

amount the Committee was required to repay comprised 64 percent of the total public funds it

had received, the highest percentage of any campaign committee, and that Brodsky was thereby

"singled out for oppressive enforcement."[7]  (*Id.* ¶ 39.)  According to Plaintiffs, this amount was

also intentionally inflated so as to enable the Board to impose higher penalties on the Committee

for exceeding campaign expenditure limits.  (*Id.* ¶ 53.)  Plaintiffs suggest in the Complaint that it

was not until 2010 that Brodsky was able to determine that the repayment amount "was

intentionally hypothecated." (*Id.* ¶ 52.)[8]  Until that time, Plaintiffs appear to allege, the Board

---

[7] According to the figures provided by Brodsky from a public website, other candidates were required to pay back 63, 29, 28, 25, 21, 12, 7, and 5 percent of the public funds they received. (*Id.* ¶ 40 (citing Final Audit Reports, 2005 Citywide Elections, http://www.nyccfb.info/reports/audt_05.htm).)

[8] While Brodsky appears to allege in the Complaint that she did not make this discovery until 2010 (*id.*), she states in opposition to Defendant's motion that the alleged fraud was not "realized" until June 2013 (Pl. Mem., at 1; *see also id.*, at 7 (stating that certain "penalties . . .

8

concealed the true amount of the Committee's repayment obligation from Brodsky and from the state courts that reviewed the Board's determination. (*Id.* ¶¶ 89-93.)

Plaintiffs further allege that, in its attempts to collect the judgment against Brodsky, the Board illegally extorted tax and financial information from her accountant (*id.* ¶¶ 125-29), engaged in *ex parte* communications with the judge who entered the judgment (*id.* ¶¶ 155, 157), and "violated laws governing attachment and execution" by, *inter alia*, issuing an excessive number of subpoenas and restraining notices (*id.* ¶¶ 171-76). Plaintiffs claim that these supposed irregularities in the proceedings to enforce the judgment resulted in a "fraudulent" transfer of Brodsky's personal funds. (*Id.* ¶¶ 199-208.) Plaintiffs also contend that Defendant's actions violated the Internal Revenue Code (*id.* ¶¶ 111, 216, 234-38) and federal criminal law (*id.* ¶¶ 114, 242). Finally, although they do not explain this allegation, Plaintiffs allege that the Board or its attorneys falsified or altered the August 31, 2009 judgment against them, and failed to serve a notice of entry of that judgment. (*Id.* ¶¶ 52, 101, 157.)

In the Complaint, Plaintiffs purport to assert three claims for relief, which they title as: (1) "42 U.S.C. § 1983 – First and Fourteenth Amendment Due Process and Equal Protection Clause Violations ("Class of One")" (*id.* ¶¶ 217-32); (2) "28 U.S.C. § 1340 Internal Revenue Code, First, Fourth and Fifth Amendment Violations" (*id.* ¶¶ 233-42); and (3) "Federal Rules of Civil Procedure Rule § 9(b) Special Pleading; 28 U.S.C. § 1367(a) Supplemental State Law; First, Fifth and Fourteenth Amendment Violations for Compensatory Damages" (*id.* ¶¶ 243-50). Affording the Complaint the liberal construction it is due (*see infra*, at n.9), this Court construes the Complaint: (1) to assert claims under Section 1983 for violations of the First Amendment

---

made contesting the amounts impossible until the June 25, 2013 filing when the fraud gradually unraveled")).

and the Due Process and Equal Protection Clauses of the 14th Amendment; (2) to allege that

Defendant violated the Internal Revenue Code and federal criminal law; and (3) to allege that the

Board's determination of the repayment obligation violated New York state statutory and

common law, as well as the New York City Administrative Code.

### 2.   Defendant's Motion To Dismiss the Complaint

On August 20, 2015, Defendant moved to dismiss the Complaint under Rules 8(a) and

12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Notice of Motion to Dismiss, dated

Aug. 20, 2015 (Dkt. 11); Defendant's Memorandum of Law in Support of [its] Motion to

Dismiss, dated Aug. 20, 2015 ("Def. Mem.") (Dkt. 12).)  Specifically, Defendant contends in its

motion that Plaintiffs' claims should be dismissed because:  (1) the Complaint does not comply

with the pleading requirements of Rule 8(a); (2) the doctrines of *res judicata* and/or collateral

estoppel preclude their claims; (3) Plaintiffs' claims under Section 1983 are, in the alternative,

barred by the applicable statute of limitations; (4) Plaintiffs lack standing to assert claims for

violations of criminal law and the Internal Revenue Code; and (5) the Court should decline to

exercise supplemental jurisdiction over any remaining state-law claims.  Along with its motion

and memorandum of law, Defendant filed an attorney declaration from Carolyn E. Kruk, Esq.,

attaching, as exhibits, copies of the New York state-court decisions regarding the underlying

dispute at issue in this case.  (*See* Kruk Decl.)

On September 2, 2015, Brodksy submitted her own declaration (*see* Pl. Decl.), and a

memorandum of law in opposition to Defendant's motion (*see* Memorandum in Support of

Plaintiff's Opposition to Defendant's Motion to Dismiss, dated Sept. 2, 2015 ("Pl. Mem.")

(Dkt. 16)).  On September 23, 2015, Defendant filed a reply memorandum in further support of

10

its motion.  (*See* Defendant's Reply Memorandum of Law in Further Support of its Motion to

Dismiss, dated Sept. 23, 2015 ("Def. Reply") (Dkt. 18).)

**DISCUSSION**

## I.   APPLICABLE LEGAL STANDARDS

### A.   Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading consist of "a

short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  Under this Rule, a pleading "does not need detailed factual allegations,"

but it must provide the court and the defendant with "fair notice of what . . . the claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations and quotations omitted); *see Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)

("The statement should be plain because the principal function of pleadings under the Federal

Rules is to give the adverse party fair notice of the claim asserted.").

While the pleading of a *pro se* litigant should be liberally construed in her favor,[9] and

while this is especially true in the context of civil rights complaints, *see Weinstein v. Albright*,

261 F.3d 127, 132 (2d Cir. 2001), the mere fact a plaintiff is proceeding *pro se* does not excuse

her from making efforts to comply with Rule 8(a).  *See Wynder v. McMahon*, 360 F.3d 73, 79

n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled

plaintiffs alike." (citation omitted)).  Thus, failure to comply with this Rule may result in the

---

[9] "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman*, 470 F.3d at 474 (internal quotation marks and citations omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers).

11

dismissal of a *pro se* complaint. *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010); *Salahuddin*, 861 F.2d at 42.

Generally, however, when a court dismisses a complaint for failure to comply with Rule 8(a), the dismissal should be without prejudice to replead, especially where the plaintiff is proceeding *pro se*. *See Salahuddin*, 861 F.2d at 42-43 ("When a court chooses to dismiss [for failure to comply with Rule 8], it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8."); *Owens v. Suter*, No. 02 Civ. 8198 (SHS), 2003 WL 942554, at \*4 (S.D.N.Y. Mar. 7, 2003) (dismissing *pro se* plaintiff's pleading for failure to comply with Rule 8 and permitting him to file an amended pleading that "simply, concisely and directly states a claim").

### B.    Rule 12(b)(6)

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997). The issue is not whether the plaintiff will ultimately prevail, but whether her claim, as pleaded, is sufficient to afford her the opportunity to proceed on the evidence. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted). At the same time,

12

"conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 666), *cert. denied*, 131 S. Ct. 901 (2011).

On a motion to dismiss a complaint, a court is generally constrained to look only to the plaintiff's pleading.  *See* Fed. R. Civ. P. 12(b); *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 492 (S.D.N.Y. 2003).  Nonetheless, the mandate that a *pro se* plaintiff's complaint be construed liberally makes it appropriate for the court to consider the factual allegations in the plaintiff's opposition materials to supplement the allegations in the complaint.  *See Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002).  A court may also consider certain additional materials, including documents attached to the complaint as exhibits or incorporated therein by reference, matters of which judicial notice may be taken, and documents that are "integral" to the complaint.  *Calcutti*, 273 F. Supp. 2d at 498 (citing *Brass v. American Films Tech.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## II.   DEFENDANT'S MOTION

### A.   Adequacy of Plaintiffs' Complaint Under Rule 8(a)

Defendant seeks dismissal of the Complaint under Rule 8(a) on the grounds that it is so "unjustifiably long and incoherent" that it is impossible to discern what claims Plaintiffs intend

to assert. (Def. Mem., at 9.) This Court agrees that the rambling, and, at times, incoherent nature of the Complaint makes it difficult to grasp the factual bases of this action or to understand the nature of Plaintiffs' claims. Moreover, the Complaint is lengthy (35 pages), and its deficiencies are magnified by unnecessary verbosity. *See* Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct."); *Salahuddin*, 861 F.2d at 42 ("[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.").

On the other hand, dismissal of a *pro se* complaint for failure to comply with Rule 8(a) is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Shomo v. State of New York*, 374 F. App'x 180, 182 (2d Cir. 2010) (quoting *id.*). While Plaintiffs' Complaint certainly does burden Defendant with the task of sifting through confusing and often disjointed allegations in order to determine what claims are actually being asserted, the pleading is not so unintelligible as to "overwhelm . . . [Defendant's] ability to understand or to mount a defense." *Wynder*, 360 F.3d at 80; *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). For this reason, I recommend that Defendant's motion be denied to the extent that it seeks dismissal of the Complaint under Rule 8(a).

**B.    Sufficiency of Plaintiffs' Federal Claims**

Defendant also argues that, even if Plaintiffs' pleading is held to satisfy Rule 8(a), it should still be dismissed under Rule 12(b)(6) for failure to state a claim. Given that the Committee has not appeared in this action, this Court will first examine the sufficiency of Brodsky's federal claims, which appear to fall into two categories: (1) Section 1983 claims, by

14

which she seeks damages for the Board's alleged violations of her federal constitutional rights to

free speech, due process, and equal protection; and (2) claims that she purports to bring under

various federal criminal statutes and provisions of the Internal Revenue Code.

Without distinguishing Brodsky's constitutional claims from any other claims that she

asserts, Defendant argues generally that Brodsky's claims are "barred in their entirety by

res judicata and collateral estoppel." (Def. Mem., at 14.)  Defendant further contends that, even

if Brodsky's claims are not precluded under those doctrines, her Section 1983 claims are barred

under the statute of limitations.  (*Id.*, at 14-15.)  With respect to Brodsky's claims for violations

of federal criminal law and the Internal Revenue Code, Defendant argues that Brodsky lacks

standing to assert such claims, because the statutes she cites cannot be used as the basis for a

civil action.  (*Id.* at 15-17.)  This Court will address these arguments in turn.

### 1.    Brodsky's Section 1983 Claims

#### a.    *Res Judicata* and Collateral Estoppel

*Res judicata*, or claim preclusion, provides that a valid final judgment on the merits bars

future actions between the parties on claims that were or could have been raised in the prior

proceeding. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014).

Although federal law determines the preclusive effect of a federal judgment, state law determines

the preclusive effect of a state court judgment. *Marvel Characters v. Simon*, 310 F.3d 280, 286

(2d Cir. 2002). "New York employs a 'transactional approach' to res judicata, which means that

'once a claim is brought to a final conclusion, all other claims arising out of the same transaction

or series of transactions are barred, even if based upon different theories or if seeking a different

remedy.'" *Lyons v. Lancer Ins. Co.*, No. 07-CV-7095 (KMK), 2008 WL 4525542, at * 5

(S.D.N.Y. Sept. 30, 2008) (citing *Parker v. Blauvelt Volunteer Fire Co., Inc.*, 93 N.Y.2d 343

(1999)); *see also People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008) (holding that *res judicata* bars a subsequent action based upon the same transaction or series of transactions if: (1) there is a valid, final judgment on the merits; and (2) "the party against whom the doctrine is invoked was a party to the previous action"); *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

Res judicata does not apply, however, where the initial forum lacked the authority to grant the full measure of relief sought in the later proceeding. *See Loren v. N.Y. City Dep't of Educ.*, No. 13-CV-7597 (VEC), 2015 WL 3917490, at *4 (S.D.N.Y. June 25, 2015) (citing *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004); *Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68, 72 (S.D.N.Y. 1990) (citing *Davidson*, 792 F.2d at 278). In an Article 78 proceeding requesting injunctive or affirmative relief, damages for civil rights violations are generally not available. *See McBride v. Bratton*, No. 96-9602, 1997 WL 383521, at *2 (2d Cir. July 9, 1997) (summary order); *Davidson*, 792 F.2d at 278-79. For that reason, *res judicata* does not bar a plaintiff who was unsuccessful in a prior Article 78 proceeding from bringing a Section 1983 suit for damages that arises from the same transaction or group of operative facts. *See Vargas*, 377 F.3d at 205; *Sorano v. Taggart*, 642 F. Supp. 2d 45, 52 (S.D.N.Y. 2009). Accordingly, the doctrine of *res judicata* does not bar Brodsky from asserting her Section 1983 claims in this Court, even though they are based on the same transaction as gave rise to her Article 78 claims.

On the other hand, the doctrine of collateral estoppel precludes relitigation of any issues that were actually raised in a prior Article 78 proceeding, regardless of the limited nature of available relief in such actions. *See Burgos v. Hopkins*, 14 F.3d 787, 792-93 (2d Cir. 1994)

16

("Determination of whether collateral estoppel applies does not depend on whether the relief now sought was available in the state [proceeding]; what matters is whether there was a full opportunity to litigate identical issues."); *Sorano*, 642 F. Supp. 2d at 53 (noting that plaintiff was barred from relitigating issues that she unsuccessfully litigated in a prior Article 78 proceeding). As Brodksy had a full and fair opportunity to litigate the issues that were necessary to the Article 78 court's final judgment on the merits, collateral estoppel bars relitigation of any issues identical to those that were actually decided in that proceeding. *See Loren*, 2015 WL 3917490, at *5.

Here, in the context of the Article 78 proceeding, the New York State Supreme Court and the Appellate Division did consider issues regarding the state due-process claim that Brodsky raised in that proceeding, and, to the extent those issues can be considered identical to issues underlying the federal due-process claim that she now seeks to raise, Brodsky would be collaterally estopped from relitigating them. *See Dutrow v. N.Y. State Gaming Comm'n*, 607 F. App'x 56, 58 (2d Cir. 2015); *Shekhem' El-Bey v. City of New York*, 419 F. Supp. 2d 546, 550-51 (S.D.N.Y. 2006). Otherwise, though, it does not appear that the state courts afforded Brodsky the opportunity to litigate the core issues that form the basis of her Section 1983 claims; specifically, the record does not reflect that factual issues regarding the Board's alleged retaliation against Brodsky for protected speech, or its purported unequal enforcement of its rules or procedures, were raised or litigated in the state courts. Thus, Brodsky is not collaterally estopped from litigating those issues here. *See Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 785-86 (S.D.N.Y. 2003) (holding that collateral estoppel did not bar Section 1983 claims because Article 78 court's decision that administrative action was not arbitrary or

irrational was not necessarily inconsistent with finding that action was discriminatory or retaliatory).

For these reasons, Brodsky's Section 1983 claims should not be dismissed, in their entirety, under the doctrines of either *res judicata* or collateral estoppel, although, if those claims were to proceed, Brodsky should be precluded from relitigating any factual issues that she raised and litigated in the state courts, including issues relating to her state due-process claim.

### b.   Statute of Limitations

Defendant argues persuasively that, to the extent that Brodsky's Section 1983 claims are not precluded, they are, in any event, barred by the applicable statute of limitations.

The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). The three-year limitations period begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the claim. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Here, Brodsky's alleged constitutional claims appear to rest on the notion that the Board deliberately miscalculated the amounts due to be repaid by her or the Committee, so as to inflate those amounts in retaliation for Brodsky's exercise of her First Amendment rights, and so as to single her out for punitive action. The Board issued its final audit report on August 17, 2006, and the Committee's counsel wrote to dispute the Board's final determination of the repayment obligation on September 15, 2006. (Kruk Decl., Ex. A, at 2.) It is therefore clear that Brodsky – who would have known how much money her Committee had actually received in matching campaign funds, and how that money had been spent – had reason to know of the miscalculation

18

(and thus of the injury upon which her Section 1983 claims are based) by, at the very latest, September 15, 2006. Accordingly, her Section 1983 claims accrued no later than September 15, 2006, and, as she did not commence this action until May of 2015 – over eight years later – those claims are *prima facie* barred by the applicable three-year statute of limitations.[10]

Brodsky appears to argue, however, that she is entitled to the benefit of equitable tolling of the limitations period. Although federal law determines when a Section 1983 claim accrues, state law determines whether the statute of limitations is subject to equitable tolling. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). "Under New York law, the doctrines of equitable tolling or equitable estoppel[11] may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Id.* at 642 (citation omitted). Equitable estoppel, though, has been characterized as an "extraordinary remedy," *see, e.g.*, *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks and citations omitted), which, "[u]nder New York law, . . . should be invoked sparingly and only under exceptional circumstances," *id.* (internal quotation marks and citation omitted).

---

[10] The last event about which Brodsky asserts any claims, the Board's procurement of an Order from the New York State Supreme Court directing the sale of her Exxon stock, occurred on July 9, 2010. (Kruk Decl., Ex. E.) The crux of Brodsky's *Section 1983 claims*, though, is that the Board violated her rights when it intentionally fabricated the repayment amount in order to punish Brodsky for her past political speech and single her out as a "class of one." These claims therefore accrued when the repayment obligation was imposed, not when it was collected. This Court notes, however, that, even if Brodsky had some type of constitutional claim that accrued in 2010, that claim would still be time-barred under the three-year statute of limitations, given that she did not commence this action until 2015.

[11] "Although federal courts distinguish between the two, New York courts use the terms ['equitable tolling' and 'equitable estoppel'] interchangeably . . . ." *Coleman & Co. Sec., Inc. v. Giaquinto Family Tr.*, 236 F. Supp. 2d 288, 299 (S.D.N.Y. 2002).

Essentially, for a statute of limitations to be tolled under this doctrine, the defendant must be found to have engaged in "affirmative" misconduct that was "specifically directed at preventing the plaintiff from bringing suit." *Id.* Absent a fiduciary obligation to disclose information, a mere "failure to disclose the basis for potential claims is not enough." *Id.*; *see also De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) ("mere silence or failure to disclose the wrongdoing is insufficient" (internal quotation marks and citation omitted).) Further, "[f]or equitable tolling to apply, a plaintiff may not rely on the same act that forms the basis for the claim." *De Sole*, 974 F. Supp. 2d at 319 (citing *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006)). Instead, there must be a "later fraudulent misrepresentation" made "for the purpose of concealing the former tort." *Id.*; *Zumpano*, 6 N.Y.3d at 674 (stating that it is "fundamental to the application of equitable estoppel for plaintiffs to establish that *subsequent* and specific actions by defendants somehow kept them from timely bringing suit" (emphasis added; citation omitted)). Before a plaintiff may take advantage of equitable tolling, she must also be able to demonstrate that, as a result of the defendant's affirmative act of concealment, she was "unable, despite due diligence, to discover facts that would allow [her] to bring [her] claim in a timely manner," *De Sole*, 974 F. Supp. 2d at 318, and that she reasonably relied on the defendant's misrepresentations, *Zumpano*, 6 N.Y.3d at 674.

In the context of a defendant's motion to dismiss a complaint on statute-of-limitations grounds, a plaintiff who seeks to rely on equitable tolling must plausibly allege facts that, if true, could satisfy the requirements of the doctrine. "Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations." *De Sole*, 974 F. Supp. 2d at 319.

In this case, although Brodsky suggests in her Complaint and opposition papers that she could not have known of the Board's alleged falsification of its calculations until years later,[12] she has not pleaded facts that could plausibly satisfy the stringent standard for equitable tolling. As an initial matter, as set out above, Brodsky plainly had the Board's final audit report in hand in 2006, and, indeed, she has not even attempted to allege that the report itself was kept from her. Nor has she alleged *any* affirmative act by the Board, subsequent to the date when it made its purportedly false calculations, that served to conceal the bases of those calculations. At most, Brodsky appears to contend that her constitutional claims are not based on the fact that the Board's calculations were wrong, but rather on the fact that its errors were deliberate and motivated by bias or malice, and that, because the Board did not disclose its improper motives, she could not have known of them. Brodsky further appears to allege that she did not come to understand that the Board had acted improperly in this respect until the Board later sought to "alter" the state-court judgment against her. (*See* Compl. ¶ 52 (alleging that "[not until several years later, when defendant altered an order . . . could plaintiff discover the repayment obligation, which derivation is concealed, was intentionally hypothecated").) Seemingly, although this is not entirely clear, Brodsky's argument is that the Board's wrongful act at the time it allegedly attempted to alter this order or judgment made her realize that the Board must have had a retaliatory or other impermissible motive for purportedly falsifying the figures in the first place.[13]

---

[12] As noted above (*see supra*, at n.8), it is not clear when Brodksy claims to have learned that the Board had supposedly falsified its calculations. Plaintiffs' Complaint suggests that Brodsky learned of this in 2010 (*see* Compl. ¶ 52), while Plaintiffs' opposition papers seem to argue that it was not until 2013 that Brodksy first "realized" that the Board had engaged in the alleged fraud (*see* Pl. Mem., at 1, 7).

[13] Brodsky also seems to suggest that the Board prevented her from discovering that she could appeal from a "falsified" judgment of the state court. (Pl. Mem., at 1 (stating that

21

This is insufficient to invoke equitable tolling. First, although Brodsky claims that the audit report was itself "fraudulent," she cannot base her equitable estoppel argument on the same act of fraud that underlies her claim. *See De Sole*, 974 F. Supp. 2d at 319. Thus, even if the Board concealed the true amount of the Committee's repayment obligation by including figures in its final audit report that were intentionally misleading, Brodsky cannot rely on this act of fraud or deception to toll the statute of limitations. *See id.* (noting that "[e]quitable tolling is triggered by some conduct on the part of the defendant *after* the initial wrongdoing" (emphasis added; internal quotation marks and citations omitted)).

Second, the nondisclosure of a bad motive cannot be viewed as an affirmative act of concealment that prevents a plaintiff from discovering actionable conduct. *See id.* Here, Brodsky has alleged no such affirmative act. She has also failed to allege any affirmative misrepresentation by the Board that induced her to refrain from filing a Section 1983 action, or upon which she reasonably relied in refraining from filing such an action during the limitations period.

Third, Brodsky has not pleaded that, upon learning, in 2006, of a supposed repayment obligation that she believed was excessively high, she acted with reasonable diligence to determine whether the Board had violated her federal due-process, First Amendment, or equal-

---

"[e]xtrinsic fraud in this case was not realized until after June 25, 2013 when plaintiff discovered she could file a notice of entry from the falsified August 31, 2009 [j]udgment which obviates the prior money execution").) Even if Brodsky's allegation is read liberally to mean that the Board improperly took some action to thwart her from pursuing an appeal in the Article 78 proceeding, this alleged "extrinsic fraud" cannot plausibly be viewed as inducing her to refrain from filing a separate lawsuit to challenge her repayment obligations on federal, constitutional grounds. Even to the extent Brodsky contends that the Board falsified or altered a state judgment, she does not, and surely could not, allege that such conduct concealed the fact that the repayment obligation, which was determined three years before the allegedly fraudulent act, was imposed without federal due process, in violation of equal-protection guarantees, or in retaliation for Brodksy's exercise of her First Amendment rights.

protection rights in seeking such a repayment. "Due diligence on the part of the plaintiff in bringing [an] action . . . is an essential element of equitable [tolling]." *Abbas*, 480 F.3d at 642 (internal quotation marks and citation omitted). Brodsky's 2006 challenge to the repayment obligation makes clear that she was "on notice that something might be amiss" by that time, *Ruso v. Morrison*, 695 F. Supp. 2d 33, 48 (S.D.N.Y. 2010) (internal quotation marks and citation omitted), and she alleges no facts that plausibly suggest that she satisfied her duty to investigate the facts underlying her constitutional claims, *see Harris v. Wilmorite Corp.*, 697 N.Y.S.2d 439, 440 (4th Dep't 1999) ("The doctrine of equitable estoppel will not apply if the plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all relevant facts . . . ." (internal quotation marks and citation omitted)).

Indeed, the Complaint and Brodsky's other submissions are devoid of any facts suggesting that a reasonable person in Brodsky's situation, who exercised due diligence, would have been unable to bring a cause of action under Section 1983 within the limitations period. *See id.* ("[W]here fraud or concealment of the existence of a claim prevents an individual from timely filing, equitable tolling of a statute of limitations is permitted until the fraud or concealment is, or should have been, discovered by a reasonable person in the situation."). In fact, Brodsky now offers evidence, from a public website, as to the stated repayment obligations of other, similarly situated candidates, and contends that this data supports her claim that she was singled out for harsher treatment than her peers. (*See* Compl. ¶ 40 (citing Final Audit Reports, 2005 Citywide Elections, http://www.nyccfb.info/reports/audt_05.htm).) Yet Brodsky offers no explanation as to why she could not have found the same, publicly available evidence earlier, with a timely exercise of diligence. This Court also notes that Brodsky asserted a due-process claim, under state law, in the Article 78 proceeding that she commenced in 2006. Brodsky has

23

not explained how, by that time, she had been able to uncover enough evidence to be able to assert such a claim in good faith, and yet, even with the exercise of due diligence, she remained unable, for several more years, to discover the alleged violation of her federal due process rights. In this regard, the fact that Brodsky began asserting claims against the Board – including a state constitutional claim – almost immediately after the imposition of the repayment obligation shows that she was in possession of enough information to commence a lawsuit within the limitations period. *See Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012) ("[T]he issue is not whether plaintiff was in possession of all the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit." (internal quotation marks and citation omitted)).

For the reasons set forth above, I recommend that the Court grant Defendant's motion to dismiss Brodsky's Section 1983 claims on the grounds that those claims are *prima facie* barred by the applicable three-year statute of limitations, and that, even affording her allegations the benefit of every favorable inference, Brodsky has not pleaded a plausible basis for tolling the limitations period.

### 2.    Brodsky's Claims for Alleged Violations of Federal Criminal Law and of the Internal Revenue Code

Brodsky alleges that Defendant violated 18 U.S.C. § 371 (the federal criminal statute proscribing conspiracy) and "illegally" extorted financial information from her accountant. (Compl. ¶¶ 26, 114, 129, 242.)  She further alleges that Defendant violated several provisions of the Internal Revenue Code.  (*Id.* ¶¶ 111, 216, 234-38; *see also* 26 U.S.C. §§ 511, 1340, 6103, 7206, 7213, 7216.)  Defendant has moved to dismiss these claims on the grounds that a private individual has no standing to sue for violations of criminal law or the Internal Revenue Code.

Defendant is correct that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)), and that the criminal statutes cited by Brodsky therefore do not provide her with a private right of action, *see Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Townsend v. New York*, No. 14-CV-6079 (CBA) (LB), 2015 WL 4692604, at *7 (E.D.N.Y. Aug. 6, 2015) (holding that there is no private right of action under criminal statutes found in Title 18 of the United States Code). For these reasons, I recommend that, to the extent Brodsky has attempted to assert claims for the violation of any federal criminal statutes, those claims be dismissed. *See Hill v. Didio*, 191 F. App'x 13, 14 (2006) (dismissing claims brought under federal criminal statutes, including 18 U.S.C. § 242); *Robinson*, 21 F.3d at 511 (same).

Any claims that Brodsky brings under 26 U.S.C. §§ 7206, 7213, or 7216 are subject to dismissal for the same reason, as these provisions of the Internal Revenue Code are criminal in nature. *See Hamad v. Gary Deshazo & Assocs.*, No. 95 Civ. 50881, 1996 WL 481362, at *2 (5th Cir. Aug. 14, 1996) (summary order) (affirming dismissal of plaintiff's claim under 26 U.S.C. § 7213 on the basis that the statute is criminal in nature); *Freedom Calls Found. v. Bukstel*, No. 05-CV-5460 (SJ) (VVP), 2006 WL 845509, at *28 (E.D.N.Y. Mar. 3, 2006) ("[T]here is no private right of action . . . under 26 U.S.C. § 7206.").

To the extent that Brodsky intends to bring suit under 26 U.S.C. § 511 or 28 U.S.C. § 1340, those provisions of the Internal Revenue Code are not criminal in nature, but they also do not grant her a private right of action, *see Le Bouteiller v. Bank of N.Y. Mellon*, No. 14 Civ. 6013 (PGG), 2015 WL 5334269, at *8 (S.D.N.Y. Sept. 11, 2015) (collecting authority in support of the proposition that there is generally no private right of action to enforce provisions of the

25

Internal Revenue Code), and, in any event, do not apply to the conduct at issue in this case, *see* 26 U.S.C. § 511 (imposing a tax on the "unrelated business income" of certain organizations); 28 U.S.C. § 1340 (conferring original jurisdiction on district courts over civil actions arising under Internal Revenue Code); *Watson v. Chessman*, 362 F. Supp. 2d 1190, 1197 (S.D. Cal. 2005) (noting that 28 U.S.C. § 1340 only confers jurisdiction, and that any civil action invoking that jurisdiction must be based on an independent cause of action). The only section of the Internal Revenue Code cited by Plaintiffs for which Congress *has* provided a private right of action, 26 U.S.C. § 6103 – a provision prohibiting government officials from disseminating an individual's confidential tax return information – also does not apply here, as it does not prohibit the disclosure of a tax return by a personal accountant in response to a subpoena. *See Maggio v. Hynes*, 423 F. Supp. 144, 145-46 (E.D.N.Y. 1976); *see also St. Regis Paper Co. v. United States*, 368 U.S. 208, 218-19 (1961) ("[A]lthough tax returns . . . are made confidential within the government bureau, copies in the hands of the taxpayer are held subject to discovery." (internal citations omitted)).

For these reasons, I recommend that the Court grant Defendant's motion to the extent that it seeks dismissal of any claims purportedly brought by Brodsky under federal criminal law or the Internal Revenue Code.

### 3.   Federal Claims Asserted by the Committee

As noted above, the Committee, while listed as a plaintiff in the caption of this action, has not appeared through counsel in the case, and thus it has not been able to advance any argument of its own, in opposition to Defendant's motion. Nonetheless, the federal claims that Brodsky purports to assert on behalf of the Committee appear to be identical to those she asserts on her own behalf. For this reason, the Committee's Section 1983 claims are also time-barred,

26

and any argument with respect to equitable tolling of the statute of limitations would be

deficient, for same the reasons discussed above. Likewise, any claims that the Committee may

be seeking to advance under any federal criminal laws or the cited provisions of the Internal

Revenue Code would be non-cognizable or otherwise without merit. Under these circumstances,

I recommend that the Court proceed to grant Defendant's motion to dismiss not only Brodsky's

federal claims, but also the same claims purportedly asserted by the Committee.

### 4.   Futility of Amendment

A district court should generally not dismiss claims asserted by a *pro se* plaintiff without

first granting the plaintiff leave to amend the complaint to cure the defects in the claims, as

initially pleaded. Where an amendment would be futile, however, leave to amend is not

required. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin*, 861 F.2d at 42.

Here, with respect to Brodsky's Section 1983 claims, there is no indication in the

Complaint or Brodsky's submissions that she would be able to amend her Complaint to allege

any facts giving rise to equitable tolling. *See Rudaj v. Treanor*, 522 F. App'x 76, 77-78 (2d Cir.

2013) (affirming dismissal without leave to amend where plaintiff's submissions did not suggest

any available facts that would entitle him to equitable tolling); *Burroughs X v. Dorn*, No. 13-CV-

3609 (ARR) (LB), 2013 WL 6563153, at *3 (E.D.N.Y. Dec. 10, 2013) ("[A]llowing plaintiff to

amend his complaint would be futile given that the pleadings suggest no grounds for the

application of equitable tolling or estoppel."); *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499,

514-15 (denying leave to amend where allegations did not indicate existence of additional facts

that would warrant equitable tolling). Further, the fact that the federal criminal laws and cited

provisions of the Internal Revenue Code do not afford Brodsky a private right of action to

challenge Defendant's alleged misconduct, or are inapplicable here, is a substantive defect that

Brodsky would not be able to surmount, even if given a chance to replead. *See Ashmore v. Prus*,
510 F. App'x 47, 49 (2d Cir. 2013) (leave to amend is futile where barriers to relief cannot be
surmounted by reframing the complaint); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)
("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.
Repleading would thus be futile."). I therefore recommend that Brodsky's federal claims
Complaint be dismissed with prejudice, without leave to replead.

As it would similarly be futile for the Committee to amend its federal claims, even
through counsel, I recommend that the dismissal of the Committee's federal claims be with
prejudice, as well. *See Unum ex rel. Neuro-Med. Diagnostic Care Servs. P.C.,* No. 13-CV-1593
(MAD/ATB), 2014 WL 1572799, at *7 (N.D.N.Y. Apr. 18, 2014) (finding that claims
purportedly asserted by *pro se* plaintiff on behalf of corporation were frivolous and that defects
could not be cured by amendment, and dismissing complaint in its entirety, with prejudice);
*Bey v. New York*, No. 11-CV-3296 (JS) (WDW), 2012 WL 4370272, at *5-9 (E.D.N.Y. Sept. 21,
2012) (dismissing with prejudice claims attempted to be brought by *pro se* plaintiff on behalf of
his wife, where such claims were barred on immunity grounds); *Long v. Key Bank, N.A.*, No. 08-
CV-6497T, 2009 WL 2580101, at *3 (W.D.N.Y. Aug. 19, 2009) (dismissing with prejudice
frivolous claims brought by *pro se* plaintiff, on behalf of himself and a corporation).

C.   **Pendent State-Law Claims**

Based on the foregoing, this Court recommends that Defendant's motion be granted with
prejudice respect to all of Plaintiffs' federal claims. Plaintiffs' Complaint can also be construed,
however, to assert state and local-law claims for: (1) alleged statutory and New York City
Administrative Code violations committed by the Board in the course of determining the
repayment obligation; and (2) common-law fraud. As Plaintiffs have no basis for pleading

28

diversity jurisdiction,[14] the Court has subject matter jurisdiction over these additional claims only under 28 U.S.C. § 1367, which provides for the Court's exercise of supplemental jurisdiction over pendent state-law claims.

Section 1367(c)(3) provides that, where a court dismisses "all claims over which it has original jurisdiction," the court may, in its discretion, decline to exercise supplemental jurisdiction over pendent claims. 28 U.S.C. § 1367(c)(3). Further, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (internal quotation marks and citations omitted); *McNaughton v. de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890, at *16 (S.D.N.Y. Feb. 4, 2015) (declining to exercise supplemental jurisdiction over state law claims after dismissing Section 1983 claims on 12(b)(6) motion); *Luciano v. City of New York*, 684 F. Supp. 2d 417, 422-23 (S.D.N.Y. 2010) (same).

This particular case is in its early stages. In fact, this Court stayed discovery pending the resolution of Defendant's motion (*see* Order, dated Sept. 17, 2015 (Dkt. 17)), and thus no discovery has yet commenced. In contrast, the parties already have an extensive history of state-court litigation, where many of the same factual or legal issues that relate to Plaintiffs' current state and local-law claims have already been addressed, at both the trial-court level and on appeal. In fact, to the extent Plaintiffs again seek to invoke state law to challenge the amount of

---

[14] In the Complaint, Plaintiffs allege that this Court has "federal question" jurisdiction over this action. *See* 28 U.S.C. § 1331 (district courts have jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States").

her repayment obligation, *res judicata* will likely bar certain of Plaintiffs' remaining claims

entirely, if such claims "were or could have been raised" in the prior state-court actions, *see*

*St. Pierre*, 208 F.3d at 399, and the state courts would be well-positioned to make that

determination. This Court also notes that, to the extent Plaintiffs may be attempting to use this

Court as a forum to "appeal" any adverse state judgments, Plaintiffs are barred from doing so

under the so-called *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413,

415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86

(1983); *see also, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)

(holding that, under the *Rooker-Feldman* doctrine, federal district courts are barred from

deciding cases "brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments").

Overall, principles of judicial economy and comity favor this Court's decline of

supplemental jurisdiction over Plaintiffs' remaining claims, and I therefore recommend that the

Court dismiss this action in its entirety.

## CONCLUSION

For all of the foregoing reasons, I recommend that Defendant's motion to dismiss the

Complaint (Dkt. 11) be granted. In particular, I recommend: (1) that Plaintiffs' federal claims

be dismissed with prejudice, and (2) that the Court decline to exercise supplemental jurisdiction

over Plaintiffs' remaining state and local claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).

Such objections, and any responses to objections, shall be filed with the Clerk of Court, with

courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States

Courthouse, 500 Pearl Street, New York, New York 10007, Room 1310, and to the chambers of

the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

10007. Any requests for an extension of time for filing objections must be directed to

Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL

RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW.

*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

If Brodsky does not have access to cases cited herein that are reported only on Westlaw,

she may request copies from Defendant's counsel. *See* Local Civ. R. 7.2 ("Upon request,

counsel shall provide the *pro se* litigant with copies of [cases and other authorities that are

unpublished or reported exclusively on computerized databases that are] cited in a decision of the

Court and were not previously cited by any party").

Dated:  New York, New York
        December 15, 2015

                                        SO ORDERED

                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

All parties (via ECF)

31