UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERYL BRODSKY,

Plaintiff, Pro Se

-against-

THE NEW YORK CITY CAMPAIGN FINANCE BOARD,

Defendant.

No. 15 CV 3469 (GBD)(DCF)

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/30/15

Meryl Brodsky
150 East 61st Street, #11-K
New York, New York 10065
(212) 866-2105; meryl7@verizon.net

# TABLE OF CONTENTS

**LEGAL STANDARD**.................................................................. 1

**ARGUMENT** .......................................................................... 2

**OBJECTION 1**:   FEDERAL AND STATE CLAIMS ARE NOT
TIME-BARRED................................................ 2

    A. Common Elements of Section 1983 Statute of
Limitations Claims.......................................... 5

    B. A District Court may exercise Supplemental
Jurisdiction over State Law Claims ...................... 7

**OBJECTION 2**:   EXTRINSIC FRAUD FALLS WITHIN THE
THREE-YEAR STATUTE ................................ 8

    A. Extrinsic Fraud Results in a Section 1983
Claim................................................... 8

**OBJECTION 3**:   THE MAGISTRATE SHOULD HAVE ALLOWED
DISCOVERY. .............................................. 16

**OBJECTION 4**:   THE INTERNAL REVENUE CODE CLAIMS
ARE NOT EXTANT ...................................... 20

**OBJECTION 5**:   EXTRINSIC FRAUD SHOULD NOT BAR A
"CLASS OF ONE" CLAIM ............................... 24

**CONCLUSION**.......................................................... 25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERYL BRODSKY,<br><br>                 Plaintiff, Pro Se<br>   -against-<br><br>THE NEW YORK CITY CAMPAIGN<br>FINANCE BOARD,<br>                   Defendant. | No. 15 CV 3469 (GBD)(DCF)<br><br>**PLAINTIFF'S OBJECTIONS<br>TO MAGISTRATE'S REPORT<br>AND RECOMMENDATION** |

Pursuant to Federal Rules of Civil Procedure § 72(b)(2) and 28 U.S.C. § 636, Plaintiff

pro se[1] objects to Magistrate Judge Debra C. Freeman's Report and Recommendation.[2] (Dkt. 20)

## LEGAL STANDARD

F.R.C.P. § 72 and 28 U.S.C. § 636—and the substantial body of interpretive case law—

require that appeals to the district judge consist of carefully reasoned and supported argument.

Under Section § 636(b)(1)(B), a judge may designate a magistrate judge to submit "proposed

findings of facts and recommendations for the disposition" of the matter to the district judge. See

generally 12 C. Wright, A. Miller & R. Marcus, Fed. Prac. & Proc.: Civil 2d, § 3068.2, p. 332

(1997) ("Wright & Miller Civil 2d"). The district court "shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which

objection is made." *Id.*

---

[1]  Pursuant to the September 17, 2015 Order "caption" (Dkt.17), this caption is changed, *supra*. (Rpt. 1-2)
    Only "persons" under a Section 1983 claim are subject to liability, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). The failure to identify in which capacity a defendant is being sued is a critical pleading defect, *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995). Municipalities and local governments are persons subject to suit for damages *and* prospective relief, *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 701 (1978) but the United States Government is not, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Individual employees of federal, *Id.* state, *Hafer v. Melo*, 502 U.S. 25 (1991) and local government, *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) may be sued in their individual capacities for damages, declaratory or injunctive relief. Such a suit does not represent a suit against the government entity for which he or she is associated, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).
[2]  The following apply:  Dkts. 1-20:( "Compl.," Dkt. 1); ("Def. Mem.," Dkt. 12); ("Def. Decl.," Exs. A-I, Dkt. 13) ); ("Plt. Decl.," Exs. A-V, Dkt. 15); ("Plt. Mem.," Dkt 16);("Magistrate's Order," Dkt. 17); ("Def. Rep. Mem.," Dkt 18); ("Magistrate's Rep.& Recom.," or "Rpt.," Dkt. 20); ("Internet Citation Note," "Note [Dkt. 20]," Dkts. 21, 22).

## ARGUMENT

Magistrate Judge Debra C. Freeman recommends that "Defendant's motion be denied to the extent that it seeks dismissal of the Complaint under Rule 8(a)," since the pleading is not "unintelligible" (Rpt. 13-14); and preserves Plaintiff's Section 1983 claim, in part, because res judicata and collateral estoppel do "not bar Brodsky from asserting her Section 1983 claims in this Court." Citing the Magistrate: (Rep.1-3, 15-18) (Plt. Mem. 15-16;1-25)

> Otherwise, though, it does not appear that the state courts afforded Brodsky
> the opportunity to litigate the core issues that form the basis of her Section 1983
> claims; specifically, the record does not reflect that factual issues regarding the
> Board's alleged retaliation against Brodsky for protected speech, or its purported
> unequal enforcement of its rules or procedures, were raised or litigated in the state
> courts. Thus Brodsky is not collaterally estopped from litigating those issues here.
> See *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 785-86 (S.D.N.Y.
> 2003) (holding that collateral estoppel did not bar Section 1983 because Article 78
> court's decision that administrative action was not arbitrary or irrational was not
> necessarily inconsistent with finding that action was discriminatory or retaliatory).

The Magistrate made a clear error by dismissing the case  on the basis of Defendant's "tolling" defense. Contrariwise, Plaintiff's claims  reside within the relevant statute of limitations and are cognizable under  the First and Fourteenth Amendments; 42 U.S.C. § 1983, guaranteeing core political speech, equal protection and compensatory damages;  also 28 U.S.C. §1367(a), supplemental State law; and 28 U.S.C. § 1340, the Internal Revenue Code. (Rpt. 24, 26, 30)

## OBJECTION 1: FEDERAL AND STATE CLAIMS ARE NOT TIME-BARRED.

Not once mentioned in Plaintiff's pleadings, both Defendant and Magistrate are clearly erroneous applying "the benefit of 'equitable tolling' to the limitations period," *citing Abbas v. Dixon,* 480 F.3d 636, 641 (2d Cir. 2007) *et al.*, a "prisoner" exception. The Report's specious conclusions cite inapposite cases. (Rpt. 18-24, 27)(Plt. Mem 1-3)

Defendant alleges that four years before injury, "Brodsky's 2006 challenge to the repayment obligation" put her "on notice that something might be amiss," *citing Ruso v.*

*Morrison,* 695 F. Supp.2d 33, 48 (S.D.N.Y. 2010). Where a 2003 claim was filed in 2008, the three-year negligence statute of limitations does not apply. The exception to the three-year statute of limitations for claims seeking money damages for breach of fiduciary duty sound in actual fraud, where the six-year statute of limitations applied to *Ruso, Id.* Summary judgment for Defendants was thus denied due to *Ruso's* fraud claim. *See Kaufman v. Cohen,* 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (2003). (Rpt. 23)

Citing *DeSole v. Knoedler Gallery, LLC,* 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013-15), the Court concludes that Plaintiff did not prevail on the RICO claims due to insufficiency, but survived on the six-year fraud statute of limitations due to false statements and omissions. In this context, Plaintiff Howard does not prevail on breach of warranty under the four-year statute but adequately pleads unilateral and mutual mistake claims evincing fraud against Knoedler, e.g., "that Knoedler knew or should have known that the de Kooning was not authentic, but that Defendant misrepresented it as such anyway." *See also Collins v. Harrison-Bode,* 303 F.3d at 435(2d Cir. 2002) (Rpt. 20, 22) Similar to the preceding cases, compensatory damages in this case accruing from 2013 under NYCPLR § 214(5) Section 1983 also fall under the CPLR § 213(8) six-year fraud statute of limitations, nullifying "tolling" or "fraudulent concealment."

The "tolling" exception applies certain conditions: Plaintiff is a minor; deemed insane; convicted of a felony and imprisoned, a major component of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA); bankrupt; not present in a state; voluntarily dismissed action; dispute resolved. The Report cites *Abbas, Id.,* a "prisoner" condition; *Zumpano v. Quinn,* 6 N.Y.3d 666, 674 (2006) *in De Sole, Id.* but Zumpano is not a "minor." (Rpt. 20); *see also Rudaj v. Treanor,* 522 F. App'x 76, 77-78 (2d Cir. 2013), "equitable tolling" in "prisoner" case (Rpt. 27); *Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013), "prisoner" not time-barred from

re-pleading; (Rpt. 18) *Burroughs X v. Dorn*, No. 13-CV- 3609 (ARR)(LB), 2013 WL6563153, at *3 (E.D.N.Y. 2013), claim occurs on the date of the  vehicle stop and summons; *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 514-15, failure to object to a Magistrate's Report. (Rpt. 27) As such cited cases do not allow any inference of "tolling" in the instant case, Defendant's intent is to devise  scams that cloak actual and extrinsic fraud under color of State law.[3]

Defendant lies that "Plaintiff had reason to know of the miscalculation" in 2006, misrepresenting federal law that "claims accrued when the repayment obligation was imposed, not when it was collected" (July 16- Aug. 19, 2010). (Rpt. 18-19, FN10) The question  when a cause of action accrues in the arena of § 1983 cases remains one of federal law,  *Nasim v. Warden, Md. House of Corrections*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc)("prisoner" asbestos claim denied.). A cause of action accrues "either when the plaintiff has knowledge of his claim or when he is put on notice – e.g., by the knowledge of the fact of injury and who caused it – to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Id*. Thus, the statute of limitations begins to run when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal a cause of action. *Id., but see Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) ("no probable cause").

Dead wrong, Section 1983 looks forward, when the injury occurs and if a cause of action can *subsequently* be proven. Defendant  intentionally applies a backward-looking "statute of repose," suited to product liability, as  asbestos, the costliest mass tort action,  wrongly *citing*

---

[3] Actual and extrinsic fraud consist of a false act or statement of material fact; knowledge that such is untrue; an intent to deceive the alleged victim; justifiable reliance by the victim; and injury to the victim as a result. A judgment procured  via extrinsic fraud provides relief from a judgment. See *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235 (2012-2014) (For lack of jurisdiction of Ecuadorian judgment, fraud and unenforceable penalty, summary judgment dismissed); *Chewning  v. Ford Motor Co.*, 579 SE2d 605 (2003) (Defendant attorneys' misconduct is extrinsic fraud where critical documents of car malfunctioning trials were withheld); *Oppenheimer v. Westcott*, 47 NY2d 595, 419NYS2d 908 (1979)(Vacatur granted because plaintiff's withholding from the court the amount litigated is "clearly misconduct, if not fraud"); *Augustin v. Augustin*, 79 3d 651, 913 NYS2d 207 (1st Dep't, 2010)(Fraud on the court alleged by both parties required remand to trial); *Tamimi v. Tamimi*, 38 AD2d 197 (1972) (Since defendant did not appear, plaintiff granted a trial to obtain a separation). (Rpt. 22)(Def. Rep. Mem. 2)

*Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012), Plaintiff's unjust enrichment claim denied since he purchased his Optiplex computers in 2003 and did not commence a lawsuit until 2010. (Rpt. 24) *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 US 350 (1991), where the U.S. Supreme Court held that equitable tolling does *not* apply to statutes of repose. The Supreme Court reiterated that premise in *CTS Corp. v. Waldburger,* 135 S. Ct. 23 (2014); *dismissing* the writ of certiorari in *Public Employees Retirement System of Mississippi v. IndyMacMBS, Inc.*, 134 S. Ct. 1515 (2014) as "improvidently granted" following settlement.

### A.  Common Elements of  Section 1983 Statute of Limitations Claims.

Until 2013, hearsay precluded any questions of evidence but  in response to the execution of her monies, Plaintiff substantiated facts to prove a case.(Rep. 8) The statute for § 1983 personal injury claims is three years pursuant to CPLR § 214(5). The gravamen of the § 1983 claim or fraud, pursuant to CPLR § 213(8), ensuing from 2013 pends the lesser during, "the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." (Plt. Mem. 1-3)  Plaintiff could not know the events that resulted in pecuniary injury until the illegal executions occurred through 2011; and the right to litigate the exact same questions and bogus "repayment obligation" on multitudinous subpoenas was denied. That the August 31, 2009 "Proposed Judgment" revealed falsified amounts, not "bonuses" (Rpt. 5, 19) on *two* orders in effect  represents a § 1983 violation. Contrary to the Report (22, FN 13), Plaintiff's 1st Amend. right to core political speech and to stand for election fall squarely within both the six-year fraud and three-year § 1983 statutes. Think of overlapping circles; each claim six years: Circle A— Injury, Execution of monies,2010-2016; Circle B—Cause of Injury, Extrinsic fraud, 2013-2019.

The intersection of the circles, 2013-2016, represents the immediate, three-year § 1983 claim.

The Report deems the "Class of One," "devoid of facts," despite that Plaintiff compiled all available evidence on the obligations of *similarly situated candidates through 2013*. Spurious hearsay, "Brodsky now offers evidence, from a public website," lacking any "explanation as to why she could not have found the same....evidence earlier," presumes the erroneous "tolling" exception. Such findings, however, require data be compared over a statistical sampling span to prove the subjects have common elements. (Rpt. 23; Note, Dkts.21, 22)(Plt. Decl. ¶ 14, Ex. M)

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere," *Newton v. City of New York*, 566 F. Supp. 2d 256 (S.D.N.Y.2008). Imprisoned 22 years for a brutal rape, Newton was vindicated on previously concealed DNA. Section 1983 required him to show that the conduct complained of was committed by a person or entity acting under color of State law, and that the conduct deprived that person of rights, privileges or immunities secured by the Constitution, of which the defendants, acting under color of State law, were culpable. Further review, *Newton v. City of New York,* No. 11-2610 (2d Cir. 2015)(*cert.*, U.S. Sup. Ct., Sept. 9, 2015; Dkt. 15-308), rejected the District's Court's premise of setting aside the verdict as well as the City's principal argument by vacating that part of the judgment dismissing Newton's First Amendment Claim.

Wrongly incarcerated for rape and murder but acquitted on DNA, the cause of action, *Desovic v.City of Peekskill*, 673 F. Supp. 2d 154 (S.D.N.Y. 2009), "plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998); *see also Williams v. Smith,* No. 02-CV-4558, 2009 WL 2431948, at *6 (S.D.N.Y. 2009) ("A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights."). It is accepted that "`tort

defendants, including those sued under [Section] 1983, are responsible for the natural consequences of [their] actions.'" *Kerman v. City of New York,* 374 F.3d 93, 128 (2d Cir. 2004) (quoting *Warner v. Orange County Dep't of Probation,* 115 F.3d 1068, 1071 (2d Cir. 1997)); *see also Higazy v. Templeton,* 505 F.3d 161, 175 (2d Cir.2007) (explaining, in context of a *Bivens* action, that tort defendants are responsible "for the `natural consequences' of their actions"). "Dismissal is a severe penalty that will not ordinarily be imposed where…the statute of limitations has run and plaintiff's claim will be essentially extinguished." Despite, *contra, Yanouskiy v. Eldorado Logistices Sys., Inc.,* No. 05-CV-2202, 2006 WL 3050871, 173*173 at *7 (E.D.N.Y. 2006); *also Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 435 (2d Cir.2005) ("A compelling reason for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum."), if the Court dismisses, the applicable three-year statute of limitations, *see Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (not a "minor")(Rpt. 18); *Pisani v. Diener,* 2009 WL 749893, at *9(E.D.N.Y. 2009) may bar plaintiff's claims against defendant. Similarly, the Court should not dismiss this case.

### B. A District Court may exercise Supplemental Jurisdiction over State Law Claims.

Principally, plaintiff Johnson contends that he was falsely arrested at an NYU gymnasium and maliciously prosecuted based on "bogus" allegations of larceny, charges of which he was ultimately acquitted at trial. The complaint seeks monetary damages from the City and from NYU, *Johnson v. City of New York,* 669 F. Supp. 2d 444 (S.D.N.Y. 2009). State law claims reiterating all of the same factual allegations involving all of the same parties as Johnson's federal claims are part of the same "case or controversy," affording the Court supplemental jurisdiction over the state law claims with respect to the NYU defendants. While Section 1367(c) gives a district court discretion to decline to hear state law claims if "the district court has

dismissed all claims over which it has original jurisdiction," that discretion may only properly be exercised where no claims over which it has original jurisdiction remain against *any* defendant in the action. *See Hansen v. Bd. of Trustees of Hamilton,* 551 F.3d 599, 608 (7th Cir.2008); *see also* 16 *Moore's Fed-Practice* § 106.66 (Matthew Bender 3d ed.). Though Johnson's federal claims remain extant against the City defendants, the Court has original jurisdiction, and thus, the Court has no discretion to decline to hear Johnson's state law claims against the NYU defendants. Defendant's tautology that if the federal claims fail, so too the supplemental state claims is subterfuge to evade compensatory damages under § 1983 should Plaintiff prevail. (Rep.28-31)

For example, because plaintiff B.F., a minor,  did not have all the factual circumstances to state a claim against the County until at least June 2005 when he was diagnosed with autism, his claims also fall within the three-year statute of limitations, *SW BY JW v. Warren,* 528 F. Supp. 2d 282 (S.D.N.Y. 2007). *See Gaidon v. Guardian Life Ins. Co. of Am.,* 96 N.Y.2d 201, 210, 750 N.E.2d 1078, 727 N.Y.S.2d 30 (2001) ("In general, a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief... [S]tatutory language determines the elements of the claim which must exist before the action accrues."); *see also Scaggs,* 2007 WL 1456221, at *10 ("Generally, the statute of limitations begins to run at the time that a plaintiff learns or has reason to learn of the injuries that form the basis for his claim."). B.F.'s state claims, as the other disabled children's, are not time-barred.

## OBJECTION 2: EXTRINSIC FRAUD FALLS WITHIN THE THREE-YEAR STATUTE.

### A. Extrinsic Fraud Results in a Section 1983 Claim.

1. From 2006 to 2009, no action had been taken to collect the bogus debt. Without notice of entry or personal service, defendant entered a "Proposed Judgment" (Plt. Decl. ¶ 6, Ex. E(1)) on August 31, 2009 and lacking any order, or "lawful mandate" (Jud. Law, § 753(A)(3)), a

Notice to Punish (Jud. Law, §§ 756, 761) without personal service on September 21, 2009. The "Proposed Judgment" contained ambiguous amounts of $35,380 but the excessive subpoenas each evinced an additional $2,000 (Pl. Decl.¶ 8, 15-20, Exs. G, N-S), which derivation was unknown, each for a total $37,885. Plaintiff received $55,776 matching funds; spent $29,766 and returned $26,010 to the N.Y.C. Election Campaign Finance Fund on July 26, 2007, previously denied by Defendant but affirmed by a State court in 2013. (Rpt. 4-7)(Compl.¶ 52-79)

A "Judgment," dated September 24, 2007 containing J.Rakower's redactions to Defendant's order of July 17, 2007 exempted treasurer Feinsot, CPA from liability. Now four orders exist: Two "Proposed Judgments" (Plt. Decl. ¶ 6, Exs. E1 and E2) and two "Judgments" (Plt. Decl. ¶6, Exs. E3 and E4). The two orders under discussion (E(1) and E(3)) are both entered on August 31, 2009 but E(1) is signed 18 days before E(3) and they are altered in two different handwritings: "Proposed Judgment" E(1) states that, "Judgment signed and entered this 13 day of Aug. 2009" is a "Duplicate Original of Order Dated July 17, 2007"; "Judgment" E(3) states "See duplicate original judgment entered on August 31, 2009." Probably the board or a clerk made the changes on the September 24, 2007 "Judgment" (E(3)) without Plaintiff's knowledge. Since "Proposed Judgments" E(1) and E(2) were not previously entered, the "Judgment" of September 24, 2007 (E(3)) was the only one still in effect, not the August 31, 2009 "Proposed Judgment" (E(1)). Defendant previously sent a letter dated August 12, 2009 to the Court during which closeted ex parte conferences occurred through August 31, 2009. Such ex parte contacts represent fraud on the court, "a decision produced by fraud upon the Court is not in essence a decision at all, and never becomes final":[4]

---

[4] The 7th Circuit defines extrinsic fraud or "fraud on the court": 'Fraud upon the court' has been defined by the 7th Circuit Court of Appeals to 'embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its

Because the Decision and Order was entered and the Board did not receive the Proposed Judgment back from the Court, the Board concluded that the Decision and Order serves as the enforceable judgment. If this conclusion is incorrect, however, please let us know whether we should re-submit the Proposed Judgment (originally submitted on July 19, 2007) to the Court.   (Plt. Decl. ¶ 7, Ex. F)

Defendants  Weisman and Suh (not at board),  both non-tenured, non-status, provisional employees obviated any past or present litigation exempting Feinsot from liabilities. The lower Court  decision of June 2007 ordered that "Petitioners' application to declare that Feinsot is not personally liable for its pending reimbursement obligations to the Board is granted," a camouflage  affirmed by the Appellate Division on June 20, 2013: "The court, however, found petitioner Feinsot was not personally liable for the repayment. Petitioners appealed to this court and we affirmed. (57 AD3d 449, 869 NYS2d 508 [1st dept 2008])." Thus, by 2013 both  injury and cause of action existed against Defendants. (Def. Decl. ¶ 2, 9, Ex. A, H)(Rpt. 4)

Devising to do it again, Defendants imposed twice the judgment amount on each Plaintiff, *plus* additional penalties presumed to be rescinded, the derivation of which was unknown. Neither could the attorneys, who diligently tried, decipher the breakdown of the amounts, which legal fees amount to over $30,000. Defendants' four-year delay evinces Weisman's incompetence to litigate as well as scienter. Defendant board knowingly imposed additional amounts it was required to disclose in order to conceal  the nondisclosure of material misrepresentations and fraud in the proceeding. Because of spurious allegations against two attorneys and Plaintiff, she wrote to the N.Y.C. Bar Association, that replied, "concerning the material allegations of professional misconduct…We have found that a judicial determination of such matters is helpful to the Committee," October 28, 2010.  (Plt. Decl. ¶ 3, 11, Exs. B, J)

2.   Via interstate mail and electronic transmission, Suh and Weisman sent 15 or more

impartial task of adjudging cases that are presented for adjudication.' *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. (Compl. ¶  95-99, 158) (Plt. Decl. ¶ 4, Ex. C)(Rpt. 9-10)

subpoenas to nonparty brokerage companies, stock transfer agents, banks, employers, accountant restraining more than five times the judgment amount and imposed real estate liens, without Plaintiff's foreknowledge. (Plt. Decl.¶ 12, 15-20, 22, 23 Exs. K, N-S, V). Extorting her tax returns and personal accountant (26 U.S.C. § 6103 (c )) enabled Defendant to attach, levy or execute personal monies for a fraudulent obligation. Mr. Sikorski filed a motion to quash:

> The two judgments, copies of which are attached, are described in the second order as "Duplicate original of order dated July 17, 2007". Yet, both orders are different from each other. This raises the question as to whether the second can be enforced. It is claimed to be a duplicate, yet it is clearly not. It seems that only the first judgment can be enforced, as it is the original, and the other judgment should be vacated. (Plt. Decl. ¶ 21, Ex. T)

After a two and one-half month delay from the submission of Robert Sikorski, Esq.'s motion to quash the subpoena not served personally upon Feinsot, Defendant devised a default foreclosing litigation on the questions of the illegal disclosure of personal tax returns and adverse claims.

Suh sent an email to J. Rakower's secretary, Iris Roberts, dated June 11, 2010, stating, "I am writing to seek clarification on the notices we received…concerning a court appearance date on June 15, 2010. We understand  from the conference this past Tuesday that Brodsky's opposition to the order to show Cause for a turnover order is due on June 15." Oral argument had been directed by the Court on Feinsot's motion but covertly postponed while Suh and Weisman acting under color of State law prepared a turnover order, numerous levies and executions on all of the  brokerage amounts, etc. culled from the tax returns, without personal service to plaintiff prescribed by law. (Rpt. 8-10)

Intended to suppress the court hearing to cause a default, they ask, "Is a court hearing scheduled for that date? Having a hearing on that same date would preclude us from being able to review the opposition papers in advance. *Additionally, we have a scheduling conflict – both Hillary Weisman and I, the attorneys handling the Brodsky matter for the NYC Campaign*

*Finance Board, are scheduled to be out of the office on June 15.*" [Emphasis added.] Iris Roberts

responded: "The appearance is on the papers only, you don't have to come to court. Have a great

weekend." By inference, they colluded to cause a default obviating any contest on the two

"orders" because Defendant could not respond to Feinsot's motion. It followed that when Joel

Schonfeld, Esq. entered an affirmation and affidavit on behalf of Meryl Brodsky for adverse

claims, stating, pursuant to CPLR §§ 5225(a) and (b),[5] (Plt. Decl. ¶ 10, 22, Exs. I, U )

> I am requesting that this Court hold in abeyance the Garnishee Order and any
> Order directing my stockbrokers and/or the transfer agents to transfer any of
> my shares of stock until my appeal to the Appellate Divisions is determined.

Defendant also shut her out. Such events evince extrinsic fraud devised to deny adverse claims.

   3.  On or about April 20-21, 2010 (Correction to Compl. ¶ 184: Date should be April 20-

21, 2010 not March 20-1), a phone conference with ComputerShare's Boston office revealed

they would *not* remit the monies in response to Defendant's turnover proceeding due to a

defective order. Since they did not want liability for adverse claims, they advised Plaintiff to

intervene in the proceeding. J. Rakower issued an order, stating, "A judgment was entered, and

thereafter Brodsky returned $26,010 in funds to the Board," without notice of entry:

> Computershare is directed, upon receipt of a certified copy of this order and judgment
> to sell a sufficient number of Judgment debtor Meryl Brodsky's shares of Exxon-Mobil
> to satisfy the judgment against Ms. Brodsky, plus sheriff's fees and statutory interest, in
> the total amount of $13,290.40. (Def. Decl. ¶ 7, Ex. F at 2, 3) (Compl. ¶ 164, 179-195)

Computershare alleges it executed the stock on July 22, "Our records indicate that the stop trade

restrictions were placed on your Eastman Kodak Company and Exxon Mobil Corporation

accounts on April 14, 2010…On July 22, 2010, 223 shares were transferred from your Exxon

Mobil account to the New York City Sheriff's Office."(Plt. Decl. ¶ 23, Ex. V).Since the illegal

---

[5] CPLR § 5239 states, in part:   "If the court determines that any claim asserted was fraudulent, it may require the
claimant to pay to any party adversely affected thereby the reasonable expenses incurred by such party in the
proceeding, including reasonable attorneys' fees, and any other damages suffered by reason of the claim.   The court
may permit any interested person to intervene in the proceeding."

transfer to the board was not consummated by the Sheriff until August 19(Compl. ¶ 215), Plaintiff applied for a stay but despite attempts unable to procure proof until late December 2010.

4. On September 15, 2011, Plaintiff sought permission via letter from the Administrative Law Judge, Civil Matters, 1ˢᵗ Judicial Department, N.Y.S. Supreme Court to enter a motion de novo to any judge of the court: (Def. Rep. Mem. FN 4 ) (Index. No. 111590/2011)

> Accordingly, 'Commencement of Cases': 'The policy of the court is that one Justice may not order the transfer of a case directly to another particular Justice except (i) pursuant to procedures governing related cases or (ii) in the case of motions to reargue or renew (CPLR § 2221) or (iii) with the permission of the Administrative Judge.'

With permission, Plaintiff entered a motion on some of the evidence that could not be previously garnered due to Defendant's flouting CPLR. Following reclusion by two judges, the motion was returned to the lower Court judge, whose case disposition deadline of March 13, 2009 had expired. Via several letters to the Administrative Judge through January 2012, cc'd to the lower Court but without any response, Plaintiff fetched from the Court on or about November 3, 2011, the Notice document now signed by the judge stating: "Decline to sign Leave to renew is denied." (Plt. Decl. ¶ 13, Ex. L) Indicia of extrinsic fraud slammed the door shut.

5. On or about June 24, 2013, Robert Sikorski, Esq. informed Plaintiff that she could still enter the prior August 31, 2009 "Proposed Judgment" (Plt. Decl. ¶ 6, Ex. E(1)), the proximate cause of injury. Plaintiff did not know how to enter a previous order that had been altered by both Defendant and the lower Court, *i.e.,* which, *if any*, of the four orders, was bona fide. No substitute, personal service or notice of entry was made, a breach of black letter law. Upon inquiry at the N.Y. County Supreme Court on June 25, 2013, she was allowed to serve the August 2009 "Proposed Judgment," evincing Defendant's extrinsic fraud. (Plt. Decl. ¶ 2, Ex. A)

6. Plaintiff analyzed e-mails, phone contacts, court folders, letters from stock transfer agents, banks, agencies (Plt. Decl. ¶ 12, Ex. K) but no correspondence existed between the

amount of the repayment/penalty and the data distilled from the financial statements. Nine disclosure statements, nos. 5-17, July 2004 – January 2006 inclusive, Table 1, "Disclosure Statements for Nine Filings; Total Expenses and Cumulative Percentages for each Disclosure Statement," contain totals which do not comport with the totals of the "repayment" amounts. (Plt. Decl. ¶ 9, Ex. H)  Facts became apparent as Plaintiff puzzled the derivation of the amounts on the four orders (Plt. Decl. ¶ 6, Exs. E(1-4)).   It finally occurred to her that the entire repayment was a hypothecation premised on an exogenous variable, a falsified total. Simply,

$$\$150,000/\$120,000 = 1.25\% = 5/4 \times \$150,000 \text{ (spending limit); } \mathbf{X = \$188,000, Total}$$
$$\$188,000 - \$150,000 = \$38,000; \ 188/38 \times .01 = 5\%; \ \$188,000 \times .05 = \$9,400 \text{ repayment}$$

The penalties eluded her for months. Not until February or March 2014 could she put the pieces together. Execution of monies for a fraudulent obligation, the proximate cause of the injury, forms a nexus with the board's intent  to suppress opposition to a U.S. lawsuit, *Lopez-Torres,* instigated to deny Plaintiff and similarly situated opponents'  14th Amendment, Section 1983 rights. The penalties, which are duplicative, have to "approximate" the fraudulent total. If $188,000- $150,000 = $38,000, the additional penalty has to reach that amount to exceed the spending limit by more than 15%, the maximum (treble the overage), here 25%, to carry over to the next election to incur a  debt:

$$\$9,400 + \$26,000 \text{ ("unspent") } + \$470 \ [\$9,400 \times .05 = \$470 \text{ penalty}] + \$150,000 + X = \$188,000 \text{ (approx.); } \mathbf{X = \$2,000 \text{ penalty}}$$

The equation explains why the former employee, trained by the Chairman, devised to impose the penalties; $470[500], $777[800], $650[700], not adjudicated, after the June 2007  decision. If the additional amounts were imposed at once, all one had to do to expose the fraud was to add them. Such total, however,  would have to be added to $150,000, the 2005 spending limit to exceed it. Thus, **$187,875 ($188) = $150,000 + $26,010 ("unspent," returned) + $9,395 + $470 + $2,000.**

7. Although defendant concealed disclosure of its calculation, it is based on the fraudulent assumption that corresponds to Penalty Guideline, "D (1)" "Exceeding the Expenditure Limit." A total of about $120,000, of which $26,010 "unspent" was returned, in no way exceeds the 2005, $150,000 spending limit. An additional $68,000 to equal the fraudulent total of $188,000[6] of which the bogus $39,247.93 debt is derived, devised to cause treble damages in any future campaign before Plaintiff incurred a cent, a deceitful trick that should not dismiss the case.[7] Because Plaintiff's Board of Elections total of $120,000 (including $26,000

---

[6]   Two penalties of $470, imposed on each of the treasurer and candidate exposed the penalty a duplication and the entire "outstanding amount" calculation, or the joint and several liability of the debt, on either, or both,  the treasurer or candidate was apocryphal but not until 2014:

$470 + $470(500) + $15,545 (card and audit) x .05=$777 ($800); $470[500], premeditated penalty +$777[800] = $1,300/2 =$650[700], where the sum of the three penalties must equal $2,000, devised to  exceed the 2005 spending limit ($150,000),  or impose treble damages for  overage exceeding 15%, "D(1), Penalty Guidelines"; where  X/$38,000= 5%,   X= $188,000, fraudulent total; $188,000/$150,000 = 5/4; 1.25/.25 = 5%, penalty; Further, $9,400 (adjustment to disbursement) = $188,000 x .05; $470 (penalty) = $9,400 x .05. Then, $9,400 + $470 + X = 11,87[5]($12,000 fraudulent obligation); X =$2,000 additional penalty. (Compl. Ex. 2)

Premised on a falsified total of $188,000, where plaintiff raised $120,000 BOE funds ($26,010 "unspent" returned) (Compl. Ex. 4), defendant concealed the nondisclosure of the total, material misrepresentations it was required to disclose, against which it shut out any defenses.
   **Derivation of Total:** $150 (spending limit)/$120(BOE funds) = 5/4 x $150,000=$188,000(rounded)
   **Derivation of Penalty Percent:** $188-$150 = $38 (exceeds limit)(000s); $188/$38 = 5 % (penalty)
-$188,000 x .05= - $9,400(-$9,400= - $1,045 card +[- $8,350 unknown]) =- $9,395 "adjustment to disbursement"
-$470 (-$470 penalty =-$9,400 x .05) - (+ $2,000 [$2,000 = $500 ($470 duplicate penalty) + $800 ($777 = $15,545 x .05, added penalty) + $700 ($650 = [$500/2 + $800/2, added penalty])) = -$11,87[5], fraudulent amount.
   **Damages: Not less than— $9,400 +$2,470 + $1,368 (sheriff's fees, interest) = $13,238 Plus: adverse claims** (Difference of cash value of 223 shares on July 22, 2010 [59.36 basis points] of ExxonMobil stock held in a dividend reinvestment plan  and current value, costs and additional interest.) (Plt.Decl.¶ 8-9, 23 Exs. G, H, V)

[7] Conflicts with constitutional safeguards are engendered by the board's policies and practices facilitated by Admin. Code   § 3-708(8) and § 3-711(1), assessing repayments "higher or lower,"  attributable to "aggravating and mitigating factors," "Penalty Guidelines," "D(1) Exceeding the Expenditure Limit" (Plt. Mem., Attachment 1); and Rules,  Appendix A(1)-(9), "Ethical Guidelines," "(9) Exemptions," permitting the board to exempt  conflict of interest laws. Thus, they can enhance their firms' LLCs, LLPs, PCs special interests by doing business with the City and evade FEC and IRS laws regulating same. (Compl. ¶ 9-19) The myriad fiats may include: no systematic audits of board spending or enforcements; no oversight of public funds or improper conduct of board employees; pseudo-fiduciary capacity; noncompliance with Internal Revenue requirements, 26 U.S.C. § 501(c )(3) and § 511; non-reporting of liquidated damages and false statements intended to defraud, 26 U.S.C. §§ 7206(1) and (4). (Rpt. 25)

Unbridled authority renders its "Penalty Guidelines," Admin. Code § 3-711, in part, unconstitutional. (Compl. ¶ 217-232). "[T]he public funding system in *Buckley* preserved the candidate's 'unfettered right to make unlimited personal expenditures' *citing Davis v. Federal Election Comm'n*, 554 U.S. 724, 739-40 (2008)," *John Liu v. New York City Campaign Finance Board*, Opinion and Order, March 2015 at 6. (Comp. ¶ 9-10, 19, 79) If acting as one,

unspent") is well below the limit, no one suspected the board of fraud except Plaintiff. Due to a prior run-in, Plaintiff confirmed it was their intent to injure any candidate with an inapposite viewpoint; in this case, to a U.S. Supreme Court lawsuit, *Lopez-Torres  v. N.Y. State Bd. of Elections,* 462 F.3d 161, 171-178 (2d Cir. 2006), *overruled* 552 U.S. 196 (0-9) (January 2008), affirming the right of Petitioners to win. See "Petitioners' Reply Brief for Petitioners N.Y. County Democratic Committee, N.Y. Republican State Committee, Associations of N. Y. State Supreme Court Justices in the City and State of New York, Honorable David Demarest, J.S.C., Point II states: 'II. The First Amendment does not Guarantee a Right to a Primary or a Right to Win, but, at most,  merely access to the Nominating Process ... (p.8).'" (Compl. ¶ 20-25)

8.   An election does not guarantee a candidate a right to win a primary but neither does it deny such right. If a candidate wins a primary for judicial office, a candidate selected at the convention could not fill that seat (the convention is held after the primary, N.Y.S. Election Law, § 6-158).  Forcing an election for such candidate, however, by eliminating the convention is wrong. Screening of jurists prior to the convention by a panel similar to gubernatorial or senatorial appointments is required which an adverse ruling would eliminate.  The U.S. Supreme Court ruled 0-9 that Petitioners have First Amendment associational rights to hold a convention.

### OBJECTION 3:  THE MAGISTRATE SHOULD HAVE ALLOWED DISCOVERY.

(1)  On September 17, 2015, Justice Magistrate Debra C. Freeman issued an order stating:

> All discovery in this action shall be stayed pending the resolution of Defendant's motion to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure (Dkt. 11), except that Defendant is directed to make reasonable efforts to determine whether any witnesses with knowledge of the events alleged in Plaintiff's Complaint are likely to become unavailable during the pendency of the motion, and to identify any such witnesses to the Court no later than 60 days from  the date of this Order. (Dkt. 17)

---

the board reasons it can collect unlimited amounts by bashing corporations doing business with the City, a faulty assumption.

Statutory language for both the six-year fraud and three-year Section 1983 statutes of limitations allow supplemental State law claims pursuant to 28 U.S.C.§ 1367(a). Although the Magistrate admits Plaintiff's claims under Rule 8(a) do not " 'overwhelm…[Defendant's] ability to understand or to mount a defense,' Wynder, 360 F3d at 80" (Rpt. 11-14), she cites irrelevant cases to decline supplemental jurisdiction: *McNaughton v. de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890, at *16 (S.D.N.Y. 2015) (state claims denied because ruminations that the NYPD monitored plaintiff's telephone and computer were implausible); *also Luciano v. City of New York*, 684 F. Supp. 2d 417, 422-23, (S.D.N.Y. 2010)("insanity toll" denied). (Rpt. 29) Whereas such cases hardly substantiate denial of State claims under Rule 8(a), less so under Rule 9(b) as Plaintiff comports with the requirement to prove extrinsic fraud with particularity.

The Magistrate does not allow one amendment, noting it possible at the pre-trial conference, c*iting Pension Ben. Guar. Corp. ex re. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* 712 F.3d 705, 727 (2d Cir. 2013)(Rpt. 29), failing to plead Morgan did not meet its fiduciary responsibilities under ERISA; *Cuoco v. Moritsugu*, 222 F. 3d 99 (2d 2000)(Rpt. 28), a transsexual prisoner's affirmation seeking medical care, though true, was not re-pled. C*ontra, see Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991), judgment vacated for a minority Ph.D. candidate and "entered … without prejudice as to the filing of an amended complaint." Citing inapposite cases, the Magistrate proceeds to "toll" the statute of limitations. That such defense is clearly erroneous should allow Plaintiff the right to re-plead the instant case. (Rpt. 27)

Outside of a few subsets of cases, such as shareholder derivative actions and qualified immunity cases, courts are generally reluctant to stay discovery pursuant to F.R.C.P. § 26(b)(1), even if a decision on a motion to dismiss is pending. *Denney v. Jenkens & Gilchrist*, 362 F.

Supp. 2d 407 (S.D.N.Y. 2004)("Plaintiffs seek to use the Kerekes Memorandum in support of their motion to lift the stay of this action pending the outcome of an appeal by certain defendants to compel arbitration of this dispute. … plaintiffs' motion is granted."); *Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007)(John Doe was the recipient of a national security letter (NSL) that requested all information associated with one of the Connecticut library's computers. Section 2709 of the Patriot Act imposed a gag order on the recipients; they could neither inform anyone of receiving the letter, nor act as witnesses. In *Doe I*, the Court concluded that § 2709 of the patriot Act " 'violate[d] the Fourth Amendment because, at least as applied, it effectively bar[red] or substantially deter[red] any judicial challenge to the propriety of an NSL request.'" *Id.* at 475. The Case was stayed by a single Circuit Justice, Ruth Bader Ginsburg, while the 2d Circuit reviewed the case. A year later, the government dropped its demands and allowed the release of the NSL. The stay was removed where *Doe I* concluded, in part, that "§ 2709 ( c) was a content-based restriction on speech in that it 'prohibits any discussion of the first-hand experiences of NSL recipients' and thus closes off 'that *entire topic* from public disclosure.' *Doe I*, 334 F. Supp. 2d at 513 (citations omitted)." The provision was thus subject to strict scrutiny. The Second Circuit, however, acknowledged that while the broad-banded prohibition against disclosure in § 2709 could not be justified, " 'the government should be accorded a due measure of deference when it asserts that secrecy is necessary for national security purposes in a *particular situation* involving *particular persons* at a *particular time.' Id.* at 524 (emphasis in original) ' " *Id.,* limiting in part, the broad scope of the First Amendment to certain provisions of the Patriot Act.); *Varughese v. Mount Sinai Medical Center* 12cv0882 (S.D.N.Y. 2014) (Three days after the stay of discovery was lifted, the court ruled on plaintiff's motion to compel, if some or all of the redacted or un-redacted documents were protected by the attorney-client

privilege.); *Reynolds v. Giuliani*, 118 F. Supp. 2d 352 (S.D.N.Y. 2000-2005); 506 F.3d 183 (2d Cir. 2007) (Plaintiffs obtained a stay on HRA's conversion of Income Support Centers to "Job Centers" under the TANF program. Since a large portion of applicants seeking food stamps, Medicaid and cash assistance were diverted, Section 1983 clams existed against the City.)

Contrary to the Magistrate's claim (Rpt. 29), stays do not preclude discovery except in limited cases prescribed by statute or if abuse of discretion. This is not a shareholder derivative action nor can the board plead qualified immunity exceptions to the discovery rule. Because the individuals here are being sued for compensatory damages, re-pleading is not futile. (Rpt. 27-28) See *Askins v. City of New York et al.*, No. 12-877 (2d Cir. 2013), explaining the liability of individual police officers, on the one hand, and that of a municipality (such as the City of New York), on the other. Dismissal of claims against individual police officers on qualified immunity and statute of limitations grounds does not preclude municipal liability under *Monell.*

Plaintiff does not seek injunctive or declaratory relief. Although delay of the monetary claim might not be irreparable, endless delays for simple discovery requests cannot be easily rationalized in a case without *any* discovery, only dicta. Defendant is still in possession of subpoenas and confidential financial information of Plaintiff's and joint owner who are severely prejudiced.(Plt. Decl. ¶15-20, 23, Exs. N-S,V) If Defendant is an authorized fiduciary of a depository; can legally obtain access to personal tax returns or order the execution of personal monies from a nonparty transfer agent cannot be adjudged because Plaintiff was denied any right to discovery or to query the witness, Dkt. 17, *supra.* Neither can it be proven that liquidated damages, that might prove the amount, were properly reported pursuant to 26 U.S.C. § 511 and §§ 7206(1) and (4). If the cancelled check for executed monies is concealed, but the procured monies are still in Defendant's possession, Plaintiff has a case for adverse claims or

compensatory damages. "[A]prerequisite to recover funds on a 5239 claim," at 7-8, *Martinez v. Capital One Bank, N.A.*, No.10cv8028 (S.D.N.Y. 2015), is that the defendant, as here, still be in possession of Plaintiff's monies. Such claims currently exist for at least $13,237.93+ of $39,247.93 procured. [8] (Plt. Mem. 18; Decl. ¶ 23, Ex.V) The Magistrate's refusal to allow any discovery undermines the credibility of its purported concern about its costs and undue burden. (Rpt. 30) Would a threshold issue exist, limited discovery can provide an efficient tool.

## OBJECTION 4:  THE  INTERNAL REVENUE CODE CLAIMS ARE NOT EXTANT.

The Report alleges Plaintiff has a private right of action under 28 U.S.C. § 6103 (c ) which prohibits dissemination of a taxpayer's confidential personal returns to anyone, except upon "disclosure of returns and return information to such persons as the taxpayer may designate in writing," except for joint returns, child custody, partnerships, corporate officers, estates, etc. (Comp. ¶ 105-114, 233-250) *Citing Maggio v. Hynes*, 423 F. Supp. 144-46 (E.D.N.Y.)(A deputy attorney general serving as a special prosecutor for nursing homes could subpoena returns from a personal accountant); *also* St*. Regis Paper Co. v. United States*, 368 U.S. 208, 219 (1961)); and *Watson v. Chessman*, 362 F. Supp. 2d 1190, 1197 (S.D. Cal. 2005) (dismissed under F.R.C.P.12(b)(1) for lack of jurisdiction), are not relevant. (Rpt. 26-28)

Dissemination by a personal accountant  in response to a subpoena pursuant to 26 U.S.C. § 7216 is restricted to a tax  court but  in nontax matters  solely in response to certain  cases, usually criminal,  by order of a district judge or prosecutor.(26 C.F.R. § 9000-5) Since Plaintiff never authorized her tax return information to any entity, Defendant lacked a right to extort her

---

[8]  Such violations are adverse claims, "'Proceedings under sections 5239 and 5240 may be maintained as independent actions in state court and hence may be brought in federal court so long as the prerequisite for federal diversity jurisdiction are met…'" Opinion and Order, No. 10cv 8028 (RJS), *Martinez v. Capital One, N.A.* (2014), at 4-8.  … The remedies available under these proceedings are, correspondingly, 'remedial in nature, aimed at undoing the effects of an improper account garnishment and restoring a judgment debtor to the position in which he or she would have been had the wrongful  garnishment never taken place.' (Cruz V at 14.) (Compl. ¶ 100, 159-170, 187-198) (Plt. Decl. ¶ 12, 23, Exs. K, V)

personal accountant or private committee organized under 26 U.S.C. § 501(c)(4) (Form 8871 "Political Organization Notice of Section 527 Status") because Defendant would have to contact the IRS, a federal judge or prosecutor, which it failed to do.[9] Thus, its demand for Plaintiff's tax returns was palpably improper. *See Abbene v. Griffin*, 208 A.D.2d 483 (1994);*McCarthy v. Klein*, 238 A.D.2d 552 (1997); *Muller v. Sorenson*, 138 A.D.2d 683 (1988) (Discovery seeking "appellant's tax returns palpably improper as it is information of a confidential, private nature.").(Plt. Mem. 17; Compl. ¶ 130) Plaintiff also contacted an IRS official who stated that a regional officer charged with responding to any request or subpoena from Defendant for personal tax return information in this case would be "slammed" (rejected) because it is a nontax matter.

Solicitors and publishers of unlawful disclosures are subject to fines and imprisonment, § 7213(a)(3), (4). *See St. Regis Paper Co. v. United States*, 368 U.S. 208, 219 (1961); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *Eastern Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.*, 96 F.R.D. 147, 148 (E.D. Va. 1982); *Kingsley v. Delaware, L. & W.R.R.*, 20 F.R.D. 156, 158 (S.D.N.Y. 1957); *Connecticut Importing Co. v. Continental Distilling Corp.*, 1 F.R.D. 190, 192 (D. Conn. 1940) (construing § 55 of the Internal Revenue Code of 1939, which is the predecessor of the current § 6103 of the Internal Revenue Code of 1954); *Contra Austin v. Aluminum Co. of Am.*, 15 F.R.D. 490 (E.D. Tenn. 1954); *O'Connell v. Olsen & Ugelstadt*, 10 F.R.D. 142, 143 (N.D. Ohio 1949).

---

[9] The "general rule" is that "returns and return information shall be confidential, and except as authorized by this title—(1)no officer or employee of the United States [and] (2) no officer or employee of any State…shall disclose any return or return information obtained by him in any manner…".I.R.C. 6103(a). The exceptions to the general rule permit disclosure of returns and return information to such persons as the taxpayer may designate in writing, I.R.C. § 6103(c ), to the taxpayer himself, I.R.C. § 6103( e)(1)(A)(i), to his spouse on stated conditions, I.R.C. § 6103(e)(l)(A)(iii), to either party to a joint return, I.R.C. § 6103(e)(1)(B), to a partner (with respect to a partnership return), I.R.C. § 6103(e)(1)(C), to any person designated by resolution of the board of directors, a corporate officer in stated circumstances, or a bona fide shareholder of more than one percent of the corporation's stock in stated circumstances (with respect to a corporate return), I.R.C. § 6103(e)(l)(D)(i), (ii), (iii), to a trustee, executor or beneficiary, in stated circumstances (with respect to the return of a trust or estate), etc. Provisions penalizing violations of Section 6103 are found at I.R.C. § 7213 (1982).

Moreover, 26 U.S.C. § 511 is not irrelevant because government or non-for-profit entities, such as the Corp. Counsel, are always liable for taxes on lobbying activities,[10] compensatory damages and legal fees. Under § Section 511, a § 501(c) is subject to tax on "unrelated business income," whether or not it actually makes a profit. Civil and criminal claims under 28 U.S.C. § 1340 intersect, including 26 U.S.C. § 501(c)(3)(4); § 511, non-reporting of collections (UBIT); 26 U.S.C. §§ 7206(1),(4), "false statements," which statutes extend six years. See *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837; *see also Cheek v. United States*, 498 U.S. 192 (1991),[11] a 'known legal duty must exist to prove a criminal wrong.' (Pl. Mem.," 2-3). (Rpt. 27) Criminal statutes Defendant alleges are invoked by Plaintiff's claims are *not*. See *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981); *Le Bouteiller v. Bank of New York Mellon*, No. 14 Civ. 6013 (2015)(Plaintiff's mortgage loan default misplaced I.R.C. REMICS law); *Townsend v. New York,* No. 14-CV-6079(CBA)(LB), 2015 WL 4692604, at *7 (E.D.N.Y. 2015), granting plaintiff the right to re-plead but dismissing the criminal claims, "File tampering, False Imprisonment [and] Libel/Defamation," under "Title 18." (Rpt. 24-26)

---

[10]  Exempt or political organizations, excluding churches or similar religious entities, must make their returns, reports, notices, and exempt applications available for public inspection. Section 501(c)(3) organizations are prohibited from supporting political candidates, and are subject to limits on lobbying. They risk loss of tax exempt status if these rules are violated. An organization that loses its 501(c)(3) status due to being engaged in political activities cannot then qualify for 501(c)(4) status.

Under the Internal Revenue Code, all section 501(c)(3) organizations are absolutely prohibited from directly or indirectly participating in, or intervening in, any political campaign on behalf of (or in opposition to) any candidate for elective public office. Contributions to political campaign funds or public statements of position (verbal or written) made on behalf of the organization in favor of or in opposition to any candidate for public office clearly violate the prohibition against political campaign activity. Violating this prohibition may result in denial or revocation of tax-exempt status and the imposition of certain excise taxes.

Certain activities or expenditures may not be prohibited depending on the facts and circumstances.

On the other hand, voter education or registration activities with evidence of bias that (a) would favor one candidate over another; (b) oppose a candidate in some manner; or (c) have the effect of favoring a candidate or group of candidates, will constitute prohibited participation or intervention.

[11]  *Chevron* deference plays a prominent role in the interpretation of the Internal Revenue Code which, of course, contains criminal provisions. Sections 7206 ff. And, even when the IRS's statutory interpretations do not directly apply to the criminal sections, they may apply to the civil tax sections that, in a criminal case, the Government would have to claim satisfy the *Cheek* requirement of a known and knowable legal duty. *Carter v. Wells-Bowen Realty, Inc.*, 736 F. 3d 722, 733. (CA6 2013). (Def. Mem. 15-17, fn. 4, 5). Further, 26 U.S.C. § 7216(b)(1)(B),"court" order is a federal, state or tax agency, see § 7216-2(f). (Def. Mem. 17) (Rpt. 25)

Singling out Plaintiff for selective enforcement due to an election-related holiday card with a nomenclature that represented an association in a committee, also an adverse party in *Lopez-Torres, Id.,* is a Section 1983 "Class of One" violation. (Rpt. 5, 8) (Compl. ¶ 13-14, 62-71) The Chairman, a lobbyist, also lead Respondent, represents a conflict. See requirements for boards involved in public interest cases (IRS Publication 557 (02/2015)):[12]

> Whether the policies and program of the organization are the responsibility of a board or committee representative of the public interest, which is neither controlled by employees or persons who litigate on behalf of the organization nor by any organization that is not itself an organization described in this chapter.

Under the I.R.C., a breach of lobbying rules risks revocation of tax-exempt status and fines. *See Regan v. Taxation with Representation of Washington*, 461 US 540 (1983), holding that denial of tax-exempt status to lobbying groups under 26 U.S.C. § 501 (c) (3) of the Internal Revenue Code did *not* violate the First Amendment. (Def. Mem. 16-17)(Plt. Mem. 22) Under 26 U.S.C. § 501 (c)(3), activities evincing bias constitute prohibited participation and risk revocation. However, the N.Y.C. Campaign Finance Board, a charter agency promulgated pursuant to the N.Y.C. Charter Ch. 46, §§ 1051-2, Campaign Finance Act codified, *inter alia*, Admin. Code § 3-701 and § 3-708(8) evinces vigorous opposition to questions concerning the derivation of debts, tax liability or guidelines, except via prosecution similar to the instant case. See *C. Virginia Fields v. New York City Campaign Finance Board,* 81 A.D.3d 441 (2011), 918 N.Y.S.2d 15, 23 Misc. 3d 658 (January 2009) ("[T]there is no obligation to reach into other funds, such as personal assets, to repay the Board," proscribing collections). Defendant lost *Fields* in every State court with costs. (Compl.¶ 43) (Plt. Mem. 24) (Def. Rep. Mem. 2-3)

---

[12] Citing 26 U.S.C. § 501( c)(3) IRS Publication 557 (02/2015), Item 3: Public-interest law firms. If your organization was formed to litigate in the public interest (as opposed to providing legal services to the poor)… you should submit the following information. How the litigation can reasonably be said to be representative of a broad public interest rather than a private one, including, *inter alia, a* description of the cases litigated or to be litigated and how they benefit the public generally.

## OBJECTION 5: EXTRINSIC FRAUD SHOULD NOT BAR A "CLASS OF ONE" CLAIM.

Singled out for core political speech  due to Defendant's malicious intent to punish the exercise of constitutional rights, Plaintiff's claim represents a "Class of One" Section 1983 violation, see *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).(Compl. 7; Plt. Mem.10, 24)

Plaintiff's Declaration, ¶ 14, Ex. M contains copies of "Outstanding Penalties and Repayments of Public Funds Owed," through 2013; dated 5/4/2007, 9/9/2008, 8/1/2013, which data was compared: (1) by  the total amount of outstanding repayments as a percent of total public matching funds received by each candidate; and (2) if such comparators show sufficient similarity to justify an inference of disparate treatment against any individual or group of candidates. (Rpt.23) Predicated on irrational precepts pursuant to the board's Laws, Rules and Guidelines, Admin. Code §§ 3-710, 3-706  and 3-711, *inter alia,* such data permits an inference of invidious discrimination based on race and association devised to perpetrate fraud, potentially falsified obligations. [13] From the data, Defendant's falsified obligation of 64 percent against Plaintiff represents the largest as a percent of total matching funds and the only one selectively enforced due to an inapposite viewpoint.(Comp. ¶ 35-40)(Plt. Decl. ¶ 14, Ex. M)

The U.S. Supreme Court has extinguished campaign finance limits imposed by the board, such as Penalty Guideline, "D (1)" "Exceeding the Expenditure Limit," which do not comport with federal or state  law. See *McCutcheon v. Federal Election Commission*, 134 S. Ct. 1434 (2014), holding aggregate limits restricting how much money a donor may contribute to

---

[13] The Second Circuit has explained that the purpose for requiring sufficient similarity among comparators for a "class of one," "is to make sure no legitimate factor could explain the disparate treatment." *Fortress BibleChurch v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). Five of the nine candidates are African-American, three are Latino but plaintiff is Caucasian. Six are from New York County, five from the Harlem community; Plaintiff from the East Side; three are from Kings County. At least five are New York County Committee members and at least one, Kings County. Of the four Caucasian comparators in council district 4 (East Side), the prevailing candidate spent about $360,000+ exceeding the 2005, $300,000 spending limit for two consecutive elections, but no obligation (same PR firm as *Lopez-Torres*); two others, not plaintiff, had obligations but no enforcement. Similar or  identical characteristics  in the sample  invoke application of the Equal Protection clause. (Compl. ¶ 35-40) (Plt. Mem. 24-25)

candidates for federal office, political parties, and political action committees do not further the government's interest in preventing quid pro quo corruption or the appearance of such corruption, while at the same time seriously restricting participation in the democratic process, they are invalid under the First Amendment; *Arizona Free Enterprise Club v. Bennett*, 131 S. Ct. 2806 (2011), holding Arizona's matching funds scheme, which provides additional funds to a publicly funded candidate when expenditures by a privately financed candidate and independent groups exceed the funding initially allotted to the publicly financed candidate, substantially burdens political speech and is not sufficiently justified by a compelling interest to survive First Amendment scrutiny; *Citizens United v. Federal Election Commission*, No. 08-205, 558 U.S. 310 (2010), holding that the First Amendment prohibited the government from restricting independent political expenditures by a nonprofit corporation. The principles articulated by the Supreme Court in the case have also been extended to for-profit corporations, labor unions and other associations.

## CONCLUSION

Based on all of the foregoing,  the Court should deny the Magistrate's Report and Recommendation to dismiss this case. Compensatory damages should be allowed for violations of Constitutional rights and supplemental State law of $13,237.93 for stock previously  in a dividend reinvestment plan, plus adverse claims or difference of stock price to date, interest and costs. Alternatively, pursuant to F.R.C.P. § 60(b), this Court should allow Plaintiff to proceed.

Dated: December 30, 2015
New York, New York

Meryl Brodsky, Plaintiff Pro Se
150 East 61st Street, #11-K
New York, New York 10065
(212) 866-2105; meryl7@verizon.net

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERYL BRODSKY

Plaintiff, Pro Se

-against-

THE NEW YORK CITY CAMPAIGN FINANCE BOARD,

Defendant.

No. 15 CV 3469 (GBD)(DCF)

**AFFIRMATION OF
SERVICE**

    I, Meryl Brodsky, declare under penalty of perjury, that on **December 30, 2015,** I served a copy of the foregoing **Plaintiff's Objections to Magistrate's Report and Recommendation,** upon Carolyn E. Kruk, Assistant Corporation Counsel, Attorney for Defendant, The New York City Campaign Finance Board, at 100 Church Street, Room 2-192, New York, New York 10007 by hand delivery.

Dated:

December 30, 2015
New York, New York

Meryl Brodsky, Plaintiff Pro Se
150 East 61st Street, Apt. 11-k
New York, New York 10065
(212) 866-2105
meryl7@verizon.net